MORAN ET AL. *v.* PRATHER.

1. Where a firm, with several persons styling themselves, as a firm in this case did, "creditors of the steamboat B.," agreed to release P. (owner of $\frac{17}{32}$ parts of the boat, the rest being owned by two other persons) "from all indebtedness due us by the said steamboat *so far as the said P. is concerned*," and where, on P.'s being about to sell to C. for a price greatly below its value had it been clear of debts, his interest in the steamer, on condition that C. would assume and pay all debts, the firm executed an agreement by which they bound themselves to defend and save the said P., free and harmless of any and all claims and demands that *may arise or be brought against said steamboat* excepting those above signed. *Held,*

    (a.) That it was not allowable to show by oral testimony that the expression "steamboat debts" was a well-known term among steamboat men

and merchants in the port where the vessel was, and meant "debts that made a lien on the boat for supplies and material," though only for six months; and that when a debt could not be enforced by any of the conservatory processes allowed by the laws of the State, it ceased to be "a debt of the boat," though it might remain a debt of the owner.

(*b.*) That the expression in the paragraph but one above, "defend and save the said P., free and harmless of any and all claims and demands that *may* arise or be brought against said steamboat," referred to debts existing at the date of the sale, and not to debts that might be contracted after it; and meant to protect the owner from all liability arising from his part-ownership of the boat, irrespectively of the fact whether the debts were liens on the boat or not.

(*c.*) That it was allowable to show that the boat was a very valuable one, and that the money price paid for her was insignificant in comparison with it, in order to infer that the purchaser had assumed the payment of existing debts against her.

2. The right of a partner to sign the firm name to a contract of indemnity in favor of third persons must be strictly proved; but it need not necessarily to be proved by a written authority to him.

ERROR to the Circuit Court for the District of Louisiana; in which court J. G. Prather filed a petition against Moran & Noble, setting forth in substance a case thus:

That he, the said Prather, with one Thoregan and two others, were joint-builders, in 1864, and jointly engaged in 1868 in navigating the steamboat Bartable; that the boat was a very valuable one, worth more than $50,000; but was liable to debts for a large amount incurred by the said owners in building and in repairing or in navigating her; that on the 25th of September, 1868, Thoregan sold his interest in the steamboat to the petitioner; the petitioner then binding himself to hold Thoregan free and harmless from all debts of the boat and owners, existing at the date of the sale, and to reimburse him for any payment that he might be compelled to make of debts then existing; that the petitioner having thus and otherwise become owner of the largest interest, that is to say, $\frac{17}{32}$ of the boat, he did in about one year afterward, that is to say, on the 21st of September, 1869, sell such interest to one Mrs. Mary Barker, for the sum, as mentioned in the bill of sale, of $6000, but that in consideration of a sale at a price so much below the value of his interest in the boat, the said Mrs. Barker was to

assume and pay all the debts existing against the same at that time, and was to protect the petitioner against them; that not relying, however, absolutely on her ability to do this, and in order to be sure of protection against all the debts existing against the steamboat at that time, the petitioner demanded an agreement of indemnity from a commercial firm in New Orleans named Moran & Noble; that certain persons whose names appear to it, had, by the instrument first given below, released the petitioner from liability; the said instrument being thus:

"NEW ORLEANS, September 20th, 1869.

"We, the undersigned creditors of the steamboat Bartable, do hereby agree to release *J. G. Prather*, of St. Louis, from all indebtedness due us by the said steamboat, *so far as the said Prather is concerned.*

"MORAN & NOBLE.          BRADY & PALMER.
"McCLOSKY & MASON.          J. S. SIMONDS.
"T. R. MEDLEY.          D. C. McCAN."

That the said persons having previously released the petitioner, the said Moran & Noble, on the day previous to the sale, and as a consideration for the petitioner making sale of so very valuable a boat for the small sum of $6000, executed in this form the instrument of indemnity which he required:

"NEW ORLEANS, September 20th, 1869.

"We, the undersigned, of the city and State aforesaid, do hereby bind ourselves and our heirs, *in solido*, to defend and save the said J. G. Prather, of St. Louis, State of Missouri, $\frac{17}{32}$ owner of the steamboat Bartable, free and harmless of any and all claims and demands that *may arise or be brought against said steamboat,* excepting those above signed.

"MORAN & NOBLE."

The petitioner further set forth that Mrs. Barker did not pay the debts according to her contract; that on the contrary, a judgment for $1139 was rendered in the courts of Louisiana at the suit of one Stevenson, and another for $1127 at the suit of one Edwards against him, the petitioner, Thoregan and the other former owners; that execution

issued on these judgments, and that he, the petitioner, was compelled to pay and did pay them; that the debts on which these judgments and executions issued were claims and demands that arose and were brought against the steamer, and were existing prior to the 20th day of September, 1869, and were embraced under the said agreement of indemnity given by Moran & Noble; that the petitioner having been thus obliged to pay the same, the said Moran & Noble under said agreement were bound to defend and save him free and harmless from said debts; but that they refused to do so, to the petitioner's damage, &c.

To the allegations of this petition there was a general denial.

The evidence showed that Mrs. Barker did not pay the debts, and that Stevenson and Edwards, not being among the creditors who released, sued Thoregan on the 22d June, 1872, and got judgment against him, which he had to pay, and that Prather repaid him what he was thus out of pocket.

The points of law and of fact, which, on the trial, seemed to be involved, were these:

I. *Whether the agreement of indemnity, which had been executed by one partner for the firm, bound the firm, unless he had authority* in writing *from the other partner to execute it.*

II. *The true meaning of the agreement of the defendants, Moran & Noble.*

The petitioner asserted that it meant that they indemnified him against any claims then existing on account of the boat—whether a lien on the boat or not—and moreover that it referred not to debts to accrue after the 20th of September, 1869 (the date of the agreement of indemnity), but to debts which, then existing, might be thereafter presented; all claims and demands, in short, which had been contracted on account of the boat, and for which he, Prather, was liable as owner.

The defendants, on the other hand, contended that the terms "all claims and demands that *may* arise or be brought," referred only to claims and demands that should arise *in futuro*, *i. e.*, should arise after the 20th of September, 1869;

and that those terms could not cover debts due by the owners of the boat years before the execution of the instrument. They contended also that the terms "that may arise or be brought against said *steamboat*," did not include debts of the owner which could not be brought against the boat itself; in other words, debts incapable of being enforced *in rem.*

In the course of the trial, the plaintiffs, with a view of showing the truth of the allegation of the petition, that Mrs. Barker had contracted to pay the then existing debts, and that the agreement of Moran & Noble referred to them, offered a witness (one Bell) to prove that on the 21st of September, 1869, when the vessel was sold by Prather to Mrs. Barker, he was the agent of Prather to make the sale, and that he did as such agent make it; that the boat was then a very valuable vessel; that the interest of Prather in her was worth much more than the amount for which she was sold and set forth in the bill of sale from Prather to Mrs. Barker, and that it was understood at the time of said sale that Mrs. Barker should assume and protect the plaintiff from all *existing* debts of the boat and give a bond to that effect.

This testimony the court allowed to be given, and the defendants excepted.

The defendants on their part offered witnesses familiar with the custom among steamboatmen and merchants in this city and others, dealing with steamboats in New Orleans, to show that the word "steamboat debts" is a well-known term among them, and that the meaning of that word is debts that are a lien on the boat for necessary supplies, materials, repairs, and wages; and in the year 1869, and for some years before and after that date, was confined to and existed according to the laws of the State but six months against a domestic vessel, like the Bartable, from the date when the debt accrued. And that when a debt could not be enforced against the boat by any of the conservatory processes allowed by the laws of the State of Louisiana, it ceased to be a debt of the boat, though it might remain a debt of the owners.

The purpose of this offer apparently was to show that the defendants had only engaged to protect Prather from debts that could be brought *in rem*, and against the steamboat, and to escape liability on the ground which they might purpose to show, that the debts which he had paid were not such debts.

The court refused to receive the testimony, and the defendants excepted.

In charging the court said:

"1st. The law is that one member of a commercial firm has no authority to bind the firm by signing the firm name to a bond executed for the benefit of third persons unless he has been especially authorized by his copartner to do so, or that his act in doing so has been ratified since it was done by his copartner, and in that event the parties would only be liable each for his share, that is, one-half each where there are two, as solidarity in obligations is never presumed, and commercial partners, though liable *in solido*, are so only in transactions connected with their commercial business. The party alleging this authority or ratification of this act must show it clearly and positively to your complete and entire satisfaction by competent evidence. It cannot be inferred and ought to be shown.

"2d. That defendants in this cause are sureties, and sought to be made liable as such. The law is that there are no presumptions against sureties; they can only be held to the precise terms of their obligation; their contract is to be construed strictly, and cannot be extended by implication beyond its express terms.

"3d. Legal agreements having the effect of law upon the parties, none but the parties can abrogate or modify them. The words of a contract are to be understood like those of a law, in their common and usual signification. Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong.

"Now, all debts of the owners of a steamboat are not debts of the boat. In order to ascertain what are debts of a boat, you must examine the evidence, and ascertain from it what is understood by the words 'debts of the steamboat,' as contained in the contract, for if the debts claimed in this suit were not such debts as could be enforced against the steamboat, then they are covered by the bond [*sic*]. A claim against a steamboat is

stale when the creditor has an opportunity to enforce it and neglected to do so for a reasonable time."

The court, having charged as first above mentioned, refused—

1st. To charge that the party alleging an authority or ratification from one partner to another to bind the firm by signing the firm name, must show such authority or ratification in writing.

2d. To charge that the petitioner could not recover unless he proved that the debt arose and was brought against the steamer since the date of the bond, to wit, September 20th, 1869.

3d. To charge that if the debts for payment of which indemnity was claimed in this suit were not such debts as could be enforced against the steamboat, they would not come within the terms of the agreement of indemnity; even though they should have arisen or been brought since the date of the bond, 20th September, 1869.

Verdict and judgment having been given in favor of the petitioner for the full amount of both the debts which his petition alleged that he had paid, the defendants brought the case here on exceptions to the admission of the evidence admitted, and to the rejection of the evidence rejected, as also to the charge given, and the charge refused.

*Mr. Bentinck Egan, for the plaintiff in error:*

1. The evidence admitted was inadmissible. The bill of sale was the only evidence of the price. Mere *circumstances* could not contradict it by showing a different price.

2. The evidence rejected ought to have been admitted. "Steamboat debts" is plainly not a legal phrase, but a technical phrase.

3. The charges refused were all, we submit, plainly fit to be given; especially the one which would not allow a partner to bind by bond his copartner, not being authorized by any instrument of equal dignity so to bind him.

*Mr. Montgomery Blair, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

The errors assigned are: (1.) That the Circuit Court erred in excluding the evidence offered by the defendants that the words "steamboat debts" mean such debts as constitute a lien or privilege on the steamboat for necessary supplies, materials, repairs, and wages; that they do not include debts which cannot be enforced against the steamboat by any of the conservatory laws of the State. (2.) That the court erred in admitting the testimony offered by the plain-, tiff that the steamboat, at the time of the sale, was a very valuable vessel, that the interest of the plaintiff was worth much more than the amount for which it was sold, and that it was understood at the time of the sale that the purchaser should assume and protect the plaintiff from all existing debts of the steamboat, and that the purchaser should give a bond to that effect. (3.) That the instructions given to the jury were erroneous. (4.) That the court erred in refusing to instruct the jury as requested by the defendants.

1. Cases arise undoubtedly in which the testimony of expert witnesses is admissible to explain terms of art and technical words or phrases, and it may be admitted that a written instrument may be so interspersed with such technical terms that it would be error in the court to exclude the testimony of persons skilled in such matters, if duly offered by the proper party in the litigation.*

Terms of art, in the absence of parol testimony, must be understood in their primary sense, unless the context evidently shows that they were used in the particular case in some other and peculiar sense, in which case the testimony of persons skilled in the art or science may be admitted to aid the court in ascertaining the true intent and meaning of that part of the instrument, but the words of the instrument which have reference to the usual transactions of life must be interpreted according to their plain, ordinary, and popular meaning; and the rule is that parol

---

* Seymour *v.* Osborne, 11 Wallace, 546.

evidence is not admissible to contradict or vary such an instrument.*

Difficulty will sometimes arise in determining whether the particular term or phrase in question is used in a technical or in a popular sense, but the court is of the opinion that no such difficulty is presented in this investigation. Instead of that it is quite clear that neither the words of the guarantee given by the plaintiff to his vendor when he made his second purchase nor the words used in the guarantee given by the defendants to the plaintiff are either doubtful or ambiguous, nor are the words of either of those contracts of a character to afford the slightest support to the proposition that parol testimony of any kind would be admissible to contradict, vary, or to unfold or expound their ordinary signification and meaning.

By the allegation of the petition it appears that the plaintiff when he made his second purchase bound and obligated himself to hold his vendor free and harmless of all debts of the steamboat and owners, existing against the steamboat at the date of the sale, and to reimburse him for any and all debts then existing that he should be compelled to pay on account of his having been an owner of the same. Language equally clear, comprehensive, and decisive is employed in the guarantee given by the defendants to the plaintiff when he transferred his entire interest to the person in whose behalf the defendants executed the guarantee which is the foundation of the present suit. Subject to the exception before stated they bound themselves and their heirs *in solido* to defend the plaintiff, and save him free and harmless of any and all claims and demands that may arise or be brought against the steamboat, which language is neither technical nor ambiguous, and it certainly falls within that class of expressions which by all the authorities must be interpreted according to their plain, ordinary, and popular meaning.†

---

* 1 Greenleaf on Evidence, 12th edition, § 285; 1 Taylor on Evidence, 6th edition, § 367.

† 2 Taylor on Evidence, 6th edition, § 1034; Robertson *v.* French, 4 East, 135.

Where the words of any written instrument are free from ambiguity in themselves, and where the external circumstances do not create any doubt or difficulty as to the proper application of the words to the claimants under the instrument, or the subject-matter to which the instrument relates, such an instrument, said Tindal, C. J., is always to be construed according to the strict, plain, common meaning of the words themselves, and that in such cases evidence *dehors* the instrument for the purpose of explaining it, according to the, surmised or alleged invention of the parties to the instrument, is utterly inadmissible.*

All the facts and circumstances may be taken into consideration, if the language be doubtful, to enable the court to arrive at the real intention of the parties, and to make a correct application of the words of the contract to the subject-matter and the objects professed to be described, for the law concedes to the court the same light and information that the parties enjoyed, so far as the same can be collected from the language employed, the subject-matter, and the surrounding facts and circumstances.†

Ambiguous words or phrases may be reasonably construed to effect the intention of the parties, but the province of construction, except when technical terms are employed, can never extend beyond the language employed, the subject-matter, and the surrounding circumstances.‡

Apply that rule to the case and it is clear that the evidence offered by the defendants was properly excluded, and that the exception under consideration must be overruled.

2. Evidence was introduced by the plaintiff at the trial that his interest in the steamboat was worth much more than the amount for which the same was sold, and that it was understood at the time of the sale that the purchaser should assume and protect the plaintiff from all existing debts of the vessel and give a bond to that effect.   Excep-

---

* Shore *v.* Wilson, 9 Clark & Finelly, 565; Mallan *v.* May, 13 Meeson & Welsby, 517.

† Addison on Contracts, 6th edition, 918.

‡ Nash *v.* Towne, 5 Wallace, 689.

tion was taken by the defendants to the ruling of the court in admitting that testimony, which ruling is the foundation of the next assignment of errors.

Parol evidence is certainly not admissible to contradict, vary, or control a written contract, but the evidence in question in this case is not subject to any such objection, whether applied to the guarantee given by the plaintiff to his vendor or to the bill of sale given to the plaintiff by the purchaser of his interest in the steamboat. Much less was paid for that interest than its market value, the evidence of which was properly admissible. as showing the surrounding circumstances at the time the bill of sale was executed, and also to show the circumstances which induced the purchaser to give the guarantee executed by the defendants.

3. Specifications of error under the third assignment involve the same question, or some phase of the same question, as that contained in one or the other of the two preceding assignments.

The defendants insisted in the court below, and still insist, that the phrase " steamboat debts " is a technical phrase, and that it did not include any debts except such as constitute a lien on the steamboat. Attempt is made to set up that theory by exceptions to the charge, as well as by exceptions to the rulings of the court, but several answers may be given to the theory, either of which is sufficient to show that the exceptions are not well founded : (1.) That the language of the guarantee is not correctly reproduced. (2.) That the phrase referred to is not a technical phrase within the meaning of the rules of evidence applicable in such cases. (3.) That by the true construction of the guarantee it includes all existing debts contracted for repairs, supplies, and running expenses for and on account of the steamboat, for which the plaintiff, as owner, was liable at the time of the sale and purchase.

Evidently the object of the agreement of guarantee was to secure the plaintiff against all liability arising from his part-ownership of the steamboat. It was his liability and not that of the steamboat which was to be protected from " all

claims and demands that may arise or be brought against the steamboat."

4. Certain requests for instruction were also presented by the defendants which were refused by the presiding justice, and the court here is of the opinion that all of them were properly refused.

Partnership may be proved by parol as well as by written evidence, which is sufficient to show that the ruling of the circuit judge in refusing the first request is correct, and enough has already been remarked in response to the first exception to show that the other requests for instruction were properly refused, for the plain reason that every one of them sets up an erroneous theory of the guarantee which is the foundation of the suit.

Evidence of usage was offered by the defendants to limit the legitimate scope and operation of the instrument of guarantee, but it was excluded by the court for reasons so manifestly proper that no argument is necessary to vindicate the action of the court.*

Usage cannot be incorporated into a contract which is inconsistent with the terms of the contract; or, in other words, where the terms of a contract are plain usage cannot be permitted to affect materially the construction to be placed upon it, but when the terms are ambiguous usage may influence the judgment of the court in ascertaining what the parties meant when they employed those terms.

Apply those rules to the case and it is clear that the theory of the controversy assumed by the circuit judge in all his rulings and in the instructions which he gave to the jury is correct. Conclusive proof of that proposition is found in the language of the guarantee, by which the defendants covenanted to save the plaintiff free and harmless of any and all claims and demands that may arise or be brought against the steamboat, except such as were relinquished by the instrument in writing executed on the same day.

JUDGMENT AFFIRMED.

---

* Thompson v. Riggs, 5 Wallace, 679; Bliven v. New England Screw Company, 23 Howard, 431; Addison on Contracts, 6th edition, 935.