# Richmond.

## Scoville v. Terry.

### February 16th, 1888.

Contracts—*Construction*—*Case at bar.*—S. and T., lessees of hotel for a term of two and a half years, agreed to advance $8,000 for its improvement. At the end of said term, S. had leased it for five years. S. agreed to pay T. at the end of their joint term, $2,500 for his interest in the improvement. Before that time arrived, hotel was burned down. S. endeavored to escape paying the $2,500 on the pretext that, as T. was a part owner of the improvement at the time of its destruction, he should bear his part of the loss:

Held :

It was a sale *in presenti* for payment at a prescribed time *in futuro*, and S. is bound to pay T. the agreed price.

Appeal from decree of corporation court of Lynchburg, rendered June 20th, 1885, in the attachment suit in equity under Code 1873, chapter 148, section 11, wherein R. Stockton Terry was complainant, and L. W. Scoville, non-resident, and A. B. Ferguson and others, garnishees, were defendants. The decree being adverse to Scoville, he appealed to this court. Opinion states the case.

*T. N. Williams,* for the appellant.

*J. W. Daniel,* for the appellee.

Hinton, J., delivered the opinion of the court.

The propriety of the decree appealed from, depends upon the construction to be given to the second clause of what is known in the record as the agreement of May 17th, 1881, which agreement, leaving out the signatures of the parties, is in the words and figures following:

"*Memorandum.* That L. W. Scoville and R. S. Terry, who constitute the firm of Scoville & Terry, have this day agreed— *First.* That they will, as a firm, advance the sum of $8,000, and apply the same to the cost of refitting, as far as the same will go, the unfinished rooms in the Kimball House, in the city of Atlanta. Such refitting shall not exceed the sum of $8,000 in cash. *Second.* At the termination of the present lease of the Kimball House in the city of Atlanta, held by said Scoville & Terry, the said Scoville, who, with another, has leased said house for five years from the termination of said lease, promises to pay said R. S. Terry the sum of twenty-five hundred dollars for his interest in said sum so to be expended in such improvements. *Third.* This contract is in no way to affect the contract existing between the said Scoville & Terry and the owners of the Kimball House, or any sum which said owners of the said house are to spend on furnishing or repairing it. Given under our hands this 17th day of May, 1881."

And in construing this contract we must look to the language employed, the subject matter, and the surrounding circumstances; for, as has been well said, courts are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. *Nash* v. *Towne*, 5 Wall., 699; *Moran* v. *Prather*, 23 Wall., 501; *Talbott* v. *Railroad Co.*, 31 Gratt., 689.

For some time prior to the making of this agreement, these parties had been engaged as partners in the conduct of the

hotel business, both in Lynchburg and Atlanta. In Lynch-
burg, Virginia, the business was being conducted at both the
Arlington House and the Norvell House—of which houses
Scoville and Terry were joint owners, under the immediate
supervision and management of Terry; but in Atlanta, Geor-
gia, the business was conducted at the Kimball House, of
which these parties were sub-lessees, by Scoville. The lease of
the Kimball House had at this time less than two and a half
years to run before it would expire by limitation, on the 1st
day of October, 1883. In anticipation of the expiration of
this lease, Scoville, in conjunction with a new partner, (not
Terry,) had leased the Kimball House for a new term of five
years, to begin when the term of Terry and himself should
expire. There were still some sixty-five unfinished rooms in
the Kimball House, which Scoville & Terry under the terms of
their lease, had the right to finish, furnish, and use during
their term without any addition to the rent. It was now set-
tled that a great cotton exposition would be held in Atlanta in
the following autumn, and hence it was regarded by Scoville
as extremely desirable that these rooms should be fitted up for
the occasion. This, however, could only be done, under the
terms of the partnership, by mutual consent; and so Scoville
met Terry in Lynchburg on the 17th May, 1881, and urged
upon him to consent that $8,000, of which "$4,000 was to be
Terry's input" and $4,000 was to be Scoville's, might be
expended in fitting up these rooms. To this proposition Terry
refused to assent, unless Scoville would agree to pay him back
$4,000 when the lease, to which he was a party, should expire;
and thereupon it was agreed to leave the matter to the arbitra-
ment of Messrs. Kirkpatrick & Blackford, and the result was
the contract of May 17th, 1881, in which Scoville agrees "to
pay said R. Stockton Terry the sum of twenty-five hundred
for his interest in said sum," meaning the $8,000 "so to be
expended in such improvements."

In the light of these circumstances, it seems too plain to

admit of discussion, that the only reason which could have influenced the arbitrators in making this award, was a kindred one to that which had in the first instance induced Terry to demand that upon the expiration of the lease Scoville should return him the whole amount of $4,000 which he was to invest—namely, that the loss of Terry's capital should be apportioned between Scoville and Terry in proportion, approximately at least, to the time during which each of them was to enjoy the benefits of the expenditure. They reasoned thus: If Scoville is to enjoy the benefits to be derived from Terry's outlay, for seven and a half years, while Terry can only be benefitted for less than two and a half years, it is equitable and just that Scoville should lose eventually $2,500, while Terry should lose at once $1,500. This we regard as so clear that it needs no argument to enforce it. *Res ipsa loquitur.* But it is contended for the appellant that, as this property was destroyed by fire about one and a half months before the expiration of the Scoville & Terry lease, while it was the property of Scoville & Terry, that Terry should bear his part of the loss. This argument, however, assumes what was manifestly not true—namely, that the property was the property of Scoville & Terry at the time of the loss. The effect of the contract was, unless we are to add a term to the agreement, to vest in the owners of the hotel a fee simple title in the improvements, from the time they were made, subject to the tenancy of Scoville & Terry for two and a half years, and further to the tenancy of Scoville, which was to commence when the lease of Scoville & Terry should cease. It was, to use the happy language of the learned counsel for the appellee, nothing more nor less than an "agreement to create property which, by the very act of creation, vested in certain ways, more or less beneficial to * * * parties, and in which two of the parties agreed to bear, mutually, the expense of creation, with an equitable agreement of the one to refund five-eighths of his expense to another, in consideration of the fact that he, the promisor,

became by its creation vested with a longer, continuing interest." The whole matter may be summed up in this: The contract was clearly a contract of hazard by which Terry sunk $1,500, absolutely and forever, while Scoville took the risk of losing $6,500, the $4,000 which he had himself put in, and the $2,500 which he promised absolutely to pay back to Terry.

The decree is, therefore, in our judgment, clearly right, and must be affirmed.

DECREE AFFIRMED.