# Staunton.

## ALBERT v. TIDEWATER RAILWAY COMPANY.

September 12, 1907.

1. CONTRACTS—*Construction—Case at Bar—Railroads—Right of Way.*— A railroad company bought a right of way through a tract of land at $28 per acre; paid the purchase price and received a deed therefor. The deed provided that the company might change the center line of its right of way to either side a distance of not more than twenty feet, upon payment of an agreed price for the additional land taken. Subsequently the owner and the company entered into a contract by which the company was permitted to change its location upon payment of $100 per acre for each acre taken, and the company agreed to reconvey to the owner the land theretofore conveyed to it, for which it was to receive a credit of $200. The new location contained about eighteen and three-fourths acres, of which about eight and one-half acres was a part of the original location for which the company held a deed. The owner knew that the new location occupied a large part of the old, and went over it with the agent of the company before the contract was entered into. The owner claimed that he was entitled to receive $100 per acre for the whole of the new location, less a credit for $200. The company claimed that it was obliged to pay the $100 per acre for only so much of the new location as was not covered by the old, and was to reconvey to the owner so much of the old location as was not covered by the new, and was to receive a credit therefor of $200, and the court so held.

2. EVIDENCE—*Parol Evidence Rule—Surrounding Facts and Circumstances.*—Parol evidence will not be received to vary, alter, or contradict the terms of a valid written instrument, but where the language of a contract is ambiguous, or its construction doubtful, courts are not shut out from the same lights which the parties enjoyed when the contract was executed, and, in order to ascertain the intention of the parties, may hear evidence of the surrounding facts and circumstances so as to place themselves in the same situation which the parties who made the contract occupied, and thus judge of the meaning of the words and their application to the things described.

Appeal from a· decree of the Circuit Court of Montgomery county.   Decree for defendant.   Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. C. Wysor,* for the appellant.

*Robertson, Hall & Woods, A. A. Phlegar* and *Jno. R. Johnson,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This suit was brought for the construction and specific performance of a contract for the sale of a strip of land, bought by the appellee railway company from the appellant as a right of way for its railroad.

It appears that in March, 1905, appellee bought and paid for a right of way for its railroad through the lands of appellant, and received a deed therefor.   This deed contains a provision that the appellee shall have the right thereunder to shift or change the center line of the right of way to either side, a distance of not more than twenty feet at any point; and that, if any such change is made in the location of the center line, the railroad company shall, if the additional land taken be on the north side of the right of way, pay therefor at the rate of $25.00 per acre, and if on the south side, at the rate of $100.00 per acre.   This provision shows that, at the time the deed of March, 1905, was made, some change in the location of the right of way therein provided for was regarded by the parties as probable.

The contract we are now asked to construe and enforce was an option contract, in writing, dated December 27, 1905, which provides that, in consideration of the appellee company adopting as a location for its railway a line crossing the lands of the ap-

pellant, he would convey to the company upon demand, a right of way 100 feet wide—that is to say, 50 feet wide on each side of the center line of the right of way, as finally located—together with such additional land as should be required for slopes, etc.; and as an additional consideration the appellee agreed to pay the appellant $100.00 per acre for each acre, to reconvey the line theretofore conveyed to the company, and to receive a credit of $200 therefor. Under this contract the appellee had thirty days in which to elect and give notice that it would take the land, and a reasonable time thereafter to make the necessary surveys and examination of the title for an apt and proper deed, which the appellant was to execute and deliver on demand. It further appears that the appellee company, immediately after the execution of this option contract, entered upon the strip of land in question, and began the construction of its railroad, and gave notice that it required a deed therefor. The strip of land thus taken and now occupied by the appellee contains 18.76 acres, of which 8.46 acres is part of the original right of way which was conveyed to the appellee.

The contention of the appellant is that, under the terms of the option contract of December, 1905, he is entitled to compensation at the rate of $100.00 per acre for the whole of the 18.76 acres contained in the finally established right of way, or $1,876, less the $200 which the contract provides he shall pay for a reconveyance of the right of way originally adopted; that, according to the strict letter of the contract, he might have the right to require the appellee to establish its right of way over altogether new land and reconvey to him the whole of the old right of way, but that, inasmuch as the company has retained for its right of way a portion of the land for which it already has a deed, he is willing to permit appellee to remain in undisturbed possession of the right of way it has taken upon the terms that it pay to him $100 per acre for the entire strip now covered by the right of way, notwithstanding the fact that appellee had bought and paid for, and already had a deed

to a large portion of such strip; the theory being that, when the railroad company closed the option contract of December, 1905, the old line became, in equity, the property of appellant, and that when the new line was located, which included part of the original line, it was in its entirety a taking of appellant's land, for which it was agreed that $100 per acre should be paid.    The result of this contention would be that the railroad company would have to pay the appellant $100 per acre for land it had already bought from appellant and paid for, at the agreed price of $28 per acre.

This construction of the contract is vigorously contested by the appellee, it being insisted on its behalf that the correct interpretation of the contract and the understanding of the parties, as shown by the surrounding facts and circumstances, was that the railroad company was liable to the appellant for the 10.30 acres of new land taken by it, at the rate of $100 per acre, or $1,030, less $200, which the appellant must pay for the 8.46 acres of the original strip not used by appellee, which it is ready and offers to reconvey to the appellant.    In other words, that, in addition to the $448 paid for the original strip, appellant owes for the right of way last established, $830 in money and a reconveyance to appellant of 8.46 acres of the land taken in the first instance.

It appears from the record that, when the contract of December 27, 1905, was made, the line of the right of way contemplated by it had been finally located for nearly four months. It further satisfactorily appears that this location was known to the appellant when the contract was made.    He saw a considerable portion of each line run; he saw that the stakes, put in the ground to mark out the line, crossed at various places the two locations; and he had made a deed for the first location, which described it with minuteness.    With the agent of the company, who went to his house to get the contract of December 27, 1905, he went over a large part of the last line, and at the agent's request, showed him the first line which had been

somewhat obscured by the removal of stakes. Under these circumstances, it cannot be doubted that, when the contract of December, 1905, was executed, appellant knew that the new location occupied a large portion of the old.

It is, however, earnestly urged that the testimony taken by the appellee was for the purpose of varying a plain and unambiguous written contract, and that the objection thereto of the appellant should have been sustained.

It is undoubtedly true that parol evidence is not admissible to alter or vary the terms of a plain, unambiguous contract. But it is equally true that the light enjoyed by the parties when the contract was made, can be shed upon the transaction in aid of a proper construction, where the language of the contract is ambiguous and leaves its interpreter in doubt as to the meaning and purpose of the parties. *Lowrey* v. *Hawaii,* 206 U. S. 206, 51 L. Ed. 1026, 27 Sup. Ct. 622; *Talbot* v. *R. & D. R. Co.,* 31 Gratt. 685, 689.

In the case last cited, Judge Burks says: "To ascertain the intent of the parties is said to be the fundamental rule in the construction of agreements; (*Canal Co.* v. *Hill,* 15 Wall. 94, 21 L. Ed. 64), and in such construction courts look to the language employed, the subject matter and surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described." Citing *Nash* v. *Towne,* 5 Wall. 689, 699; 18 L. Ed. 527; *Maryland* v. *Railroad Co.,* 22 Wall. 105, 22 L. Ed. 713; *Moran* v. *Prather,* 23 Wall. 492, 501, 23 L. Ed. 121.

In the case of *Southern R. Co.* v. *Franklin &c. R. Co.,* 96 Va. 693, 32 S. E. 485, 44 L. R. A. 297, Judge Riely says: "It

is proper to observe that a court, in construing an agreement whose language leaves in doubt its meaning as to the particular matter in controversy, in order to ascertain the intention of the parties, should have regard to the occasion which gave rise to the contract, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself; and give the agreement that construction which will effectuate the real intent and meaning of the parties as thus ascertained from the entire instrument, and by reference to the circumstances attending the making of it."

In the case at bar, it does not appear on the face of the contract that the old and new locations touch at any point, and if they did not touch, there would be no ambiguity or dispute about the contract.   But when it appears that the two lines cover much of the same land, an ambiguity arises at once, and the question must be answered, What land did the parties intend, by the language used, should be paid for at the rate of $100 per acre?   When the court knows what the parties knew at the time the contract was made, the difficulty is easily solved. As already seen, the parties knew that the location of the new right of way covered about one-half of the old, and that the company would acquire about ten acres of new land and abandon about eight acres of the old at $200 in gross, which was less than the appellant had received for it.

We are of opinion that when the contract is read in the light of the facts disclosed by the pleadings and the evidence adduced, it is very clear that the parties never contemplated that the railroad company was to be required to pay appellant $100 per acre for such of its own land as it might see fit to retain and use in locating the new right of way agreed upon; the only reasonable construction of the contract of December, 1907, being, that the company should pay appellant $100 per acre for the 10.30 acres of new land acquired by it and embraced in the final location, and should reconvey to appellant that portion

of the old line not used as part of the new right of way, for which reconveyance the railroad company was to have a credit of $200.

The circuit court having reached this conclusion, its decree must be affirmed.

*Affirmed.*