## Staunton.

### ADAMS, PAYNE & GLEAVES, INCORPORATED v. INDIANA WOOD PRESERVING COMPANY.

September 12, 1930.

Absent, Holt and Gregory, JJ.

*Hall & Buford,* for the plaintiff in error.

*McNab, Holmes & Long, Woods, Chitwood, Coxe & Rogers,* and *Murray A. Foster,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Adams, Payne & Gleaves, Incorporated, the plaintiff in error, is engaged in the lumber business at Roanoke, Virginia; the Indiana Wood Preserving Company, the defendant in error, has a plant at Terre Haute, Indiana, for the treatment of lumber with chemical preservatives; the Edward Hines Lumber Company is a manufacturer of lumber, with offices at Chicago and plants in Mississippi and elsewhere; John Pettyjohn and Company are building contractors, and were the general contractors for the building of plants for the Viscose Company at Parkersburg, West Virginia, Roanoke, Virginia, Lewiston and Meadville, Pennsylvania. The Ballinger Company, of Philadelphia, was the architect and engineer who made plans and specifications for, and superintended the construction of, the plants for the Viscose Company.

In the fall of 1927 Pettyjohn and Company had under construction in Roanoke a plant for the Viscose Company, and had contracted with the plaintiff in error for the delivery of certain lumber. The plaintiff in error, in turn, bought this lumber from Edward Hines Lumber Company, who engaged the defendant in error to have the same treated at its Terre Haute plant with a certain chemical preservative, known as "Wolman Salts." The treatment was given at the plant of the defendant in error for fourteen dollars per thousand, under the supervision of an inspector for the Viscose Company. After the lumber was delivered in Roanoke the supervising architect deemed it advisable to employ Gale N. Wood, a chemical engineer, to ascertain whether or not the lumber had received the required amount of Wolman Salts. The report of Gale N. Wood was to the effect that the treatment was defective. The architect,

on receipt of this information, calculated that there was due the Viscose Company the sum of $2,874.12, and immediately made demand on Pettyjohn and Company, the contractor, for a refund of this amount. Pettyjohn and Company made like demand on the plaintiff in error, from whom it had purchased the lumber, and the plaintiff in error, in turn, made demand on Hines Lumber Company. The defendant in error, through its president, Card, admitted the claim of the Viscose Company to be just, but claimed that it was liable for only fourteen-twenty-fifths of the claim and that Edward Hines Lumber Company should be held liable for eleven-twenty-fifths as it had received twenty-five dollars per thousand feet for the treatment, whereas it had paid defendant in error only fourteen dollars per thousand, the eleven dollars per thousand feet being a clear profit to Hines Lumber Company. Whether or not the defendant in error agreed to pay the whole sum prior to the entering into of the contract hereinafter referred to, is in dispute.

While this claim for the refund remained unpaid, the Viscose Company engaged Pettyjohn and Company to construct two other plants, one at Lewiston and one at Meadville, Pennsylvania. The specifications for the application of Wolman Salts to the lumber required for these plants were the same as for the lumber used in the construction of the plant at Roanoke. The plaintiff in error had submitted bids for the lumber to be used in both plants and was verbally informed by Pettyjohn and Company that its bid for the Lewiston plant to the amount of 600,000 feet of lumber would be accepted. On April 3, 1928, Old, the manager for the plaintiff in error, and one Bryant, a salesman for Edward Hines Lumber Company, went to the mill of the Hines Lumber Company, at Lumberton, Mississippi, for the purpose of arranging the manner in which the lumber was to be manufactured and shipped. From the

Lumberton plant, the two went to Chicago for two purposes; (1) to arrange for settlement of the refund for the defective treatment of lumber in the Roanoke plant, and (2) to arrange for the treatment of the lumber on the Lewiston job. Old and Bryant testified that Card, for the defendant in error, unconditionally promised to refund the $2,874.12, and that the three, namely, Old, Bryant and Card, together went to the office of the Hines Lumber Company in order that Card might make a last effort to get that company to pay a part of the refund. The Hines Lumber Company refused to pay any part of it and Card then promised to give Old a check for the entire refund. On the same day the following writing was duly signed.

"This agreement made and entered into this 14th day of April, 1928, by and between the Indiana Wood Preserving Company, a Corporation, with offices in the city of Chicago, Cook county, Illinois, and Adams, Payne & Gleaves, Incorporated, of Roanoke, Virginia, Witnesseth:

"We, the Indiana Wood Preserving Company, agree to pay the full claim of $2,874.12 (two thousand, eight hundred and seventy-four dollars, and twelve cents), made by the Viscose Company, of Virginia, because of failure to properly treat a certain schedule of timbers and planking shipped by the Edward Hines Lumber Company, Lumberton, Mississippi, during the month of October, or October and November, 1927, for treatment at our treating plant at Terre Haute, Indiana.

"It is agreed that we, parties of the first part, Indiana Wood Preserving Company, are to be favored with the treating of another certain schedule of timbers and planking which is now being purchased by the said party of the second part, Adams, Payne & Gleaves, Incorporated, from the Edward Hines Company, amounting to approximately 600,000 feet (six hundred thousand) to be shipped for treatment by Edward Hines Lumber Company to our

plant at Terre Haute and thence shipped to Lewiston, Pennsylvania, after treating.

"It is further understood and agreed that Adams, Payne & Gleaves, Incorporated, are to specify Indiana Wood Preserving Company treatment on still another million or more feet of timbers and planking which they anticipate purchasing from Edward Hines Lumber Company, provided, however, that all the treatment of this present schedule shall be properly executed under inspection and supervision of Gale N. Wood, chemical engineer of Philadelphia, Pennsylvania, and that other treatments to be made shall also be made under the approval, supervision and inspection of Gale N. Wood, whether such treatment shall be made of Wolman Salts or other chemicals.

"The price for such treating as mentioned hereinabove shall be $14.00 (fourteen dollars) per thousand feet board measure, if treated by Wolman Salts furnished by the said Indiana Wood Preserving Company, or $9.00 (nine dollars) per thousand feet board measure for lumber treated by Wolman Salts or other chemicals furnished by either Adams, Payne & Gleaves, Incorporated, or Edward Hines Lumber Company, but it is understood that the Indiana Wood Preserving Company are not to be responsible for furnishing Wolman Salts other than they may now have unless hereinafter mutually agreed upon."

On April 27th, Pettyjohn and Company telegraphed the plaintiff in error that the Terre Haute plant was not satisfactory to the Wolman Salts people, and on the same day the plaintiff in error arranged to have the lumber treated at the plant of Ayer & Lord, at Carbondale, Illinois. On May 2nd, the plaintiff in error notified the defendant in error that it had been unable to have the lumber treated at its plant because "their customer" refused to accept lumber treated there. Thereupon, the defendant in error brought action against the plaintiff in error by a notice of

motion for the loss of profits for the treatment of 1,600,000 feet of lumber. On the trial of the same the jury returned a verdict in favor of the defendant in error for $3,900.00.

The defendant in error contends that the proper construction of the above contract is that the defendant in error was obligated to do three things. (1) Pay a disputed claim of $2,874.12. (2) Receive, treat, and reship 1,600,000 feet of lumber. (3) To charge for the treatment $14.00 per thousand feet until all the Wolman Salts on hand was used and $9.00 per thousand feet thereafter. The defendant in error paid the $2,874.12 and claimed that this payment was the consideration for it to be allowed to treat the 1,600,000 feet of lumber, and that while it was ready, able and willing to apply the treatment, the opportunity so to do was denied it by the plaintiff in error.

The plaintiff in error contends that a proper construction of the contract is: (1) that the $2,874.12 was admitted by the defendant in error to be due because of the defective treatment of the lumber, and obligated itself to pay the same before the 14th day of April, and reiterated its promise on that day. (2) That there was no unconditional promise on the part of the plaintiff in error to deliver any lumber to the defendant in error for treatment. (3) That it was not the intention of the parties for the plaintiff in error to be bound unconditionally, and this is gathered from the language contained in the contract, the subject matter, and the surrounding circumstances.

The errors assigned are: (1) The giving and refusing of instructions. (2) The refusal of the court to set aside the verdict because the amount is based on speculation and conjecture, and is without evidence to support it.

Taking up the assignments of error in the order named, the court, on the request of the defendant in error and over the objection of the plaintiff in error, gave instruction K, and refused instruction 5, requested by the plaintiff in error, which instructions are as follows:

"K": "The court instructs the jury that if they believe from the evidence that both parties to the contract in evidence understood that the word 'favor' in the contract meant that the plaintiff was to be furnished the 600,000 feet of lumber for treatment unconditionally, then the plaintiff is entitled to recover in this action the profits on the treatment of such amount of 600,000 feet, if they still further believe from the evidence that the said 600,000 feet of lumber was not in fact furnished for treatment, and that the plaintiff was at all times ready, willing and able to treat it."

No. 5: "The court instructs the jury that if they believe from the language employed in the contract of April 14, 1928, between the plaintiff and the defendant, from the subject matter of said contract, from the situation of the parties, and from the surrounding circumstances at the time as disclosed by the evidence, that the intention of the parties was that the defendant should in good faith attempt to have the treating of the lumber mentioned in said contract done by the plaintiff, and that it was not intended by the parties to the said contract to bind the defendant absolutely and at all events to have the said lumber treated by the plaintiff; and if they further believe from the evidence that the defendant did in good faith favor the plaintiff by endeavoring to have said lumber treated by the plaintiff, and did attempt to obtain said business for the plaintiff, then the defendant is under no liability to the plaintiff in this action for the alleged breach of said contract and you should find for the defendant."

It is not disputed that A. J. Bryant drafted the contract, and that it was executed in Chicago at the office of the Hines Lumber Company; that the defendant in error admitted the claim of the Viscose Company to be just; that the defendant in error had applied Wolman Salts under the same specifications to the lumber used in the construction of two plants, namely, Parkersburg and Roanoke, which

treatment was found satisfactory for the first named plant, while for the latter it was unsatisfactory; that the Viscose Company was building two other plants and that Pettyjohn and Company was the general contractor; that a large quantity of lumber, to be treated with the same preservative, was required; that the plaintiff in error was bidding to furnish this lumber and had been verbally assured that its bid to furnish 600,000 feet would be accepted; that Mr. Old had been to the Mississippi plant of the Hines Lumber Company to arrange for the manufacture and shipment of the lumber; that the sale of Wolman Salts was largely, if not exclusively, controlled by the American Impregnation Corporation; that serious objections to any sale of this salts to the defendant in error was raised by this corporation; that the Ballinger Company was the supervising architect, and that treatment of all lumber had to be in accordance with specifications prescribed by the architect; that the only object the plaintiff in error had in purchasing the lumber was for the purpose of reselling it to Pettyjohn and Company, to be used in the construction of the plants for the Viscose Company.

The matters in dispute are: (1) Whether the defendant in error, while admitting the justness of the claim of the Viscose Company, promised to pay more than its part thereof before the contract was executed. (2) The intention of the parties, at the time the contract was executed, to be bound unconditionally. (3) Whether or not the plaintiff in error did honestly endeavor to obtain the Wolman Salts for treatment of the lumber at the defendant in error's plant and have the same there applied.

In addition to other testimony, the following letter from the defendant in error, dated April 30, 1928, tends to show that it did not regard the undertakings on the part of the plaintiff in error as unconditional. "I have not heard anything from you since you were here on the 14th. I sincerely

hope you will let me have the first installment of your lumber for the Viscose Company as you know I have enough Wolman Salts on hand to treat approximately 200,000 feet of lumber and if for any reason I am to be counted out on participating in this order, I hope you will let me get rid of the stock which I have as it is of no good for anything else. Please let me hear from you."

There is evidence tending to show that the words "are to be favored" used in the contract meant the giving to the defendant in error the business of treating the lumber at the Terre Haute plant. Instruction "K" makes this meaning of the words the sole test of the defendant in error's right to recovery, so far as the profits on the 600,000 feet are concerned, and directs a verdict upon a partial view of the evidence. The giving of this instruction, therefore, under all the circumstances, was error.

The law is well settled that in case of ambiguity in a written contract evidence *aliunde* is admissible in order that the true intention of the parties to the contract may be ascertained. In the case of *Talbott* v. *Richmond and Danville Railway Company*, 31 Gratt. (72 Va.) 685, the rule is stated thus:

"To ascertain the intent of the parties is said to be the fundamental rule in the construction of agreements (*Canal Co.* v. *Hill*, 15 Wall. 94 [21 L. Ed. 64]); and in such construction courts look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, and so to judge of the meaning of the words and of the correct application of the language to other things described. *Nash* v. *Towne*, 5 Wall. 689, 699 [18 L. Ed. 527]. See also, *Maryland* v. *Railroad Co.*, 22 Wall. 105 [22 L. Ed. 713]; *Moran* v. *Prather*, 23 Wall. 492, 501 [L. Ed. 121]."

To the same effect, see *White* v. *Sayers*, 101 Va. 821, 45 S. E. 747; *Virginia R. Co.* v. *Avis*, 124 Va. 711, 98 S. E. 638; *Chesapeake & P. Telephone Co.* v. *Wythe Telephone Co.*, 142 Va. 529, 129 S. E. 389.

■ Instructions 5 and 6 are based on the same principle of law. Instruction 6, given by the court, applied the principle to a hypothetical statement of the evidence on the theory maintained by the plaintiff in error. The refusal to give instruction 5, under these circumstances, is not reversible error.

■ ■ Instruction No. 3, requested by the plaintiff in error and refused, is as follows: "The court further instructs the jury that if they shall believe from the evidence that the amount of $2,874.12 paid to the defendant by the plaintiff on April 14, 1928, was in settlement of a claim made by the Viscose Company of Virginia on account of the failure of the plaintiff to properly treat with Wolman Salts certain lumber to be used by the Viscose Company of Virginia in a building at Roanoke, Virginia; that the plaintiff, prior to such payment, had admitted that said amount was justly due to said Viscose Company, and had admitted its liability for and had agreed to refund said amount; that the payment of said amount was in no sense a consideration for the defendant's alleged promises as set forth in said contract of April 14, 1928, and if they further believe from the evidence that there was no other consideration for said alleged promises, (then) the defendant's alleged promises, as set forth in said contract, are not supported by a consideration deemed valuable in law, and there can be no recovery in this action on account of the alleged breach of the defendant's said promises."

The sole consideration alleged in the notice of motion moving from the defendant in error was the payment of $2,874.12. Mr. Card on this point testified as follows: "Mr. Olds came to Chicago and he said that for $2,874.12

'I will deliver two jobs of lumber, one for which I have a contract in my pocket for 600,000 feet, and the other for a million feet, as soon as I get it,' and I paid him the $2,874.12, and he signed a contract that he would deliver me those two jobs. * * * He agreed to take so much for delivering to me the two jobs and I paid him that for the two jobs."

It is well settled that mutual promises in a contract constitute a valuable consideration. *Bernstein* v. *Bord*, 146 Va. 670, 132 S. E. 698. In the instant case, the defendant in error, in the trial court, relied not on mutual promises but on the payment of a certain definite sum as the consideration for obtaining this particular business, and on this position he must win or lose. *Southern Railway Co.* v. *Willcox*, 98 Va. 222, 35 S. E. 355.

The other objection urged to this instruction is that the defendant in error made payment of the claim of the Viscose Company when it was under no obligation to do so, and hence such payment is voluntary and constitutes a valuable consideration for the promise of the plaintiff in error. On this point the evidence is in conflict. Instruction No. 3 left the finding of fact to the jury and the instruction should have been given.

It is evident from the verdict of the jury that they allowed recovery only for the profits which would have arisen from the treatment of the 600,000 feet of lumber. Mr. Card stated that he had had thirty-five years' experience in applying chemical preservatives to lumber and knew what the profits to his company would have been if it had treated the lumber, and that on the 600,000 feet the profits would have been $5,034.00. The gross compensation for which he agreed to treat this lumber was $5,400.00, or $9.00 per thousand feet. He further testified that it was necessary for the lumber to be unloaded from the cars and reloaded after treatment, at a cost of $1.40 per thousand, or $840.00,

leaving from his gross receipts $4,560.00. The jury's verdict was $3,900.00, showing that they deducted therefrom $660.00. The duty was upon the defendant in error to prove its profits with reasonable certainty and to give evidence which would either show directly the amount of damage sustained, or establish facts from which the court could deduce with reasonable certainty the amount of such damages. *Bristol Belt Line Railway Co.* v. *Bullock Electric Manufacturing Co.*, 101 Va. 652, 44 S. E. 892.

In the present case, the defendant in error has simply made a statement showing the gross returns which would have been received from the work, and a statement showing one item of cost, and claims its profits would have exceeded the difference between the two by $474.00, which statements are inconsistent. In order for it to recover, it was incumbent upon it to prove with reasonable certainty not only the gross amount it was to receive under the contract, but the cost of performing the work, such as the cost of fuel, labor, overhead expenses, and the like.

The court is of opinion that this too is reversible error; and for the errors committed by the trial court in giving instruction "K" and refusing to give instruction 3, as requested, the judgment is set aside and the case remanded for a new trial.

*Reversed.*