## Staunton.

## ·Chesapeake and Potomac Telephone Company v. The Wythe Mutual Telephone Company.

### September 17, 1925.

1. Contracts—*Construction—Toll Line Agreement between Telephone Companies.*—In construing a toll line agreement between telephone companies, the court will look to the circumstances surrounding the transactions, the construction placed upon the contract by the parties thereto, and from this viewpoint seek to arrive at an equitable conclusion.

:2. Contracts—*Construction—Intent of Parties—Surrounding Circumstances.*—In the construction of contracts to ascertain the intent of the parties is the fundamental rule; courts look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described.

:3. Telegraph and Telephone Companies—*Toll Line Agreement—Unconscionable Bargain.*—In the instant case, complainant, a telephone company, contended that under a toll line agreement with defendant company, it was entitled to pro rate with defendant on all messages passing through the town of Wytheville. Defendant, on the other hand, construed the contract to mean that it was only to pro rate on messages originating or terminating on lines of complainant, and for three years complainant acquiesced in defendant's construction of the contract. During these three years defendant made no effort to keep a toll study of through messages. In order to do this it would have to assume the burden of keeping a record of all messages which originate at any point in the nation, outside of the limits of the lines of complainant. This would impose upon the defendant the terms of an unconscionable bargain.

·4. Contracts—*Construction—Practical Construction.*—No rule for the construction of written instruments is better settled than that which attaches great weight to the construction put upon the instrument by the parties themselves.

5. Contracts—*Construction—Right of the Case.*—Unless the intention of the parties to a contract is made manifest by the "language employed, the subject matter and the surrounding circumstances," that construction should be given which is consistent with the right of the case.

6. Contracts—*Practical Construction—Toll Line Agreement between Telephone Companies—Case at Bar.*—In the instant case, a suit by complainant, a telephone company, against defendant, another telephone company, for a discovery and accounting, complainant contended that it was entitled to pro rate with defendant on all messages passing over and through long distance circuits through the town of Wytheville, regardless of the origin or termination of the messages, under a toll line agreement between the companies. In pursuance of this toll line agreement settlements were made upon a monthly basis for about three years, based not upon a pro rate on through messages but upon a compensation on originating and terminating messages within the territory embraced by the lines of complainant. During this period no pro rate was claimed or allowed on these through messages. This condition of affairs was satisfactory to the parties until the president of complainant ascertained that some other companies in the State with which defendant was dealing were receiving more compensation, and after an examination of the toll line agreement, made claim for the pro rate on through messages.

*Held:* That as the complainant acquiesced in the construction placed upon the contract by defendant, it was concluded by such acquiescence from claiming the pro rate on through messages.

Appeal from a decree of the Circuit Court of Wythe county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*John S. Eggleston* and *S. B. Campbell,* for the appellant.

*W. E. Fulton* and *W. B. Kegley,* for the appellee.

Campbell, J., delivered the opinion of the court.

The bill in this cause was filed by the appellee asking for a discovery and accounting by reason of the pro-

visions of a contract entered into between appellant and appellee.

The Virginia and Tennessee Telephone Company, the predecessor in title of the appellant, was engaged in the local and long distance telephone business in the town of Wytheville and in the county of Wythe.

It was also engaged in transmitting long distance messages in other parts of the State, both upon its own system, and as a part of what is known as the Bell system.

The appellee was likewise engaged in the local telephone business in the town of Wytheville and the county of Wythe.

As a result of this conflicting situation, the two companies began negotiations which culminated in the sale of its central plants and local facilities by the Virginia and Tennessee Company to the appellee.

The agreement entered into was evidenced by three writings executed July 1, 1915: (1) A deed from the Virginia and Tennessee Company, conveying its local exchange, franchise wires and equipment within the corporate limits of the town of Wytheville, Virginia, together with certain lines, easements, etc., outside of the town, to the appellee; (2) a traffic agreement which provided for an interchange of traffic and the handling of long distance communications through the switch boards of the appellee, and for compensation for such services, measured by or based upon a percentage of tolls collected from month to month, this percentage to be fixed by periodical toll studies; under this agreement, the appellee was given, as its full compensation for long distance messages, an originating commission upon messages sent from Wytheville or from territory embraced within its own lines; no prorate was provided for in this agreement; (3) a plant agreement,

which, after reciting the foregoing agreements provides. for various connections and interchange of telephonic communications over the lines and through the exchanges of the respective parties; it also provides that the Virginia and Tennessee Company will, at its own expense, maintain the two copper wire circuits running through the corporate limits of the town, and that it will likewise maintain any additional circuits which may be thereafter erected.

In this agreement the appellee covenants that it will,. upon the termination thereof, convey such long distance copper wire circuits as may then be installed to the Virginia and Tennessee Company together with such rights as the appellee may have the power to convey.

Subsequent to the foregoing negotiations all the properties, franchises and business of the Virginia and Tennessee Telephone Company were acquired by purchase by the appellant and by an order of the State Corporation Commission, entered February 29, 1916,. the Virginia and Tennessee Company was duly merged with and into the appellant and ceased to exist as a. separate corporation.

After the acquirement of the properties of the Virginia and Tennessee Company, the appellant offered to add to the traffic agreement a provision for a pro-rate of the tolls for long distance messages originating or terminating at any point on the lines of appellant,. instead of merely compensation to appellee in the way of commissions upon messages sent from Wytheville or originating in the territory embraced within its own lines.

Pursuant to this offer an agreement was entered into,. effective June 2, 1917, called the exchange and toll line agreement. Under and by virtue of subsection 7 of

this agreement it was and is provided as follows: "For all communications passing over the toll lines of both parties hereto and originating or terminating on the lines of either party, each party hereto shall be entitled to receive, in addition to, and after first deducting, the originating commissions, hereinbefore specified, a share of the amount of the through toll remaining for each such communication, in the proportion, in each case, which the length of its toll line bears to the whole length of the toll lines of both parties hereto, measured by airline distance between the point at which the toll lines of both parties hereto connect and the respective points of origin and termination.

"For all communications passing over the toll lines of both parties hereto and originating or terminating on the lines of the Bell Company's connecting companies, other than the connecting company party hereto, the parties hereto shall share in the amount of the through toll remaining after deducting the originating commissions hereinbefore specified and the allowance for the use of the lines of such connecting companies, and the lines of any other such connecting companies involved, in the proportion, in each case, which the length of the toll line of each party hereto bears to the whole length of the toll lines of both parties hereto, measured by air-line distance between the point at which their toll lines connect and the terminals of their respective toll lines involved.

"In determining the pro rata on tolls, for all communications passing over the toll lines of both parties hereto, that route shall govern which will provide the shortest sum of air-line distance between the points of origin and termination, determined as hereinbefore provided."

It is over this provision of the contract that this liti-

gation has arisen. Concretely stated, the contention of the appellee is that it is entitled to pro rate with the appellant on all messages passing over the through wires located in the town of Wytheville regardless of the origin or termination of the messages.

The contention of the appellant is that (a) the agreement does not include a pro rate on through messages; (b) that the provision (if any) for a pro rate on through messages was inserted through mutual mistake; (c) that a specific enforcement of the contract would be inequitable.

The cause was submitted to the circuit court upon the original bill and exhibits, the answer and cross-bill of appellant, the demurrer of appellee and the depositions of witnesses. The conclusion reached by the chancellor was that the appellee was entitled to the relief sought in its bill of complaint and a decree was entered which sets forth, amongst other things, the following:

(1) That the defendant is not entitled to the relief prayed for in its answer asked to be treated as a cross-bill, and the said answer treated as a cross-bill is accordingly dismissed.

(2) That the complainant is entitled to the relief prayed for in its bill, and the demurrer of the defendant to said bill is accordingly overruled, and it is adjudged, ordered and decreed that the defendant do account to and pay over to the complainant the pro rate on tolls provided for in subsection 7 of division third of the contract filed as an exhibit with complainant's bill and set out in the complainant's bill, on all messages hereafter passing over the long distance circuits through the town of Wytheville and not originating or terminating at or through the local exchange of the complainant in the town of Wytheville; and in

addition thereto, that the defendant continue to account to and pay over to the complainant its pro rate on tolls on messages originating and terminating at or through the exchange of the defendant in the town of Wytheville as heretofore has been done under contract dated September 11, 1916, effective June 2, 1917, the pro rate in each case to be upon basis of air line mileage as provided in subsection 7 of division third of the contract aforesaid.

And it is further adjudged, ordered and decreed that the defendant do keep, open to the inspection of the complainant, records of messages passing over the said through long distance circuits through the town of Wytheville, in accordance with the provisions of the contract aforesaid, effective June 2, 1917, and that it account to and pay over to the complainant its pro rate on tolls on all messages hereafter passing over said long distance circuits in accordance with the provisions of the contract aforesaid.

The court is further of opinion, and doth adjudge, order and decree that the complainant is entitled to recover from the defendant its pro rate on tolls upon through long distance messages passing over the long distance circuits through the town of Wytheville not originating or terminating at or through the local exchange of complainant in the town of Wytheville, from and since the effective date of the said contract, dated September 11, 1916, to-wit, June 2, 1917, and that the defendant is liable to account to and pay over to the complainant pro rate on tolls of such messages; but it not sufficiently appearing to the court from the testimony in the record what amount or amounts should be decreed to the complainant on account of such pro rate since June 2, 1917, up to this date, it is adjudged, ordered and decreed that this cause be, and

the same hereby is, referred to Horace Sutherland, who is hereby appointed a special commissioner for the purpose, who, after giving due notice to the parties, shall take, state and settle an account showing:

(1) What amount or amounts are due and payable by the defendant to the complainant on account of pro rate on tolls on through long distance messages passing over the long distance circuits through the town of Wytheville and not originating or terminating at or through the exchange of the complainant in the town of Wytheville, from and since the 2nd day of June, 1917, up to this date.

It appears that the exchange and toll line agreement was negotiated by R. L. Pierce, president, for the appellee, and N. O. Wood, for the appellant.

In giving his version of the negotiations, Mr. Pierce deposed:

"Q. 47. Please state whether there was any negotiations between the Chesapeake and Potomac Company and your company leading up to the new traffic agreement of September 11, 1916, and in this connection state fully all that occurred between the two companies in connection with the execution of this new agreement?

"A. There was no particular negotiation. The matter came up between Mr. N. O. Wood, district manager of the Chesapeake and Potomac Company, and myself by his statement to me that his company desired to install different toll rates in Wythe county; they desired to file a new tariff of toll rates and make changes in the toll rates which affect points in The Wythe Company's territory; that they wanted to execute with us a new standard traffic agreement.

"Q. 48. How was this taken up between Mr. Wood and yourself?

"A. Over the 'phone, I think. The Chesapeake and Potomac Company, he stated, wanted to execute a new standard traffic agreement which they called their 'toll line and exchange agreement,' and in lieu of the former agreement which was called an 'exchange agreement.' Mr. Wood stated that this new agreement would provide additional revenue for The Wythe Company, since in addition to the commissions on originating tolls for the collection of said tolls which was provided by the former agreement, the new agreement also in addition provided a pro rate for the use of the line of the company, on a message going over those lines, whether outgoing or incoming. And it was stated that in view of the different tariff on toll rates which included toll rates, and on account of the pro rate for the use of The Wythe Company lines that the rates to The Wythe Company would be increased. I said that if that was the case it would be entirely satisfactory and I would be willing to take the new agreement under those conditions. Mr. Wood thereupon prepared the new agreement and sent it to me and I signed and returned it to him for execution by his company, and after his company had executed it he returned me a copy with his letter of May 28, 1917."

On cross-examination, Mr. Pierce was asked: "What was said between Mr. Wood and yourself as to messages going through?

"A. Nothing.

"Q. The only messages discussed were incoming and outgoing messages?

"A. The only question discussed so far as I can recall it was not a question of messages at all, but a question of the fact that there would be other toll rates installed for these outlying points, and the fact that The Wythe Company would be compensated for the use of its line."

In giving his version of the matter Mr. Wood says: "As far as I know, the intention was to clear up the situation in Wythe county that was to some extent discriminatory as compared to other localities in the State, and primarily to give to the connecting company a revenue that they were not getting by reason of their hauling messages over lines which they owned and maintained to these outlying points, and which other connecting companies throughout the State were getting.

"Q. Did you communicate this intention to Mr. Pierce?

"A. Yes, sir; I talked to Mr. Pierce over the telephone and went into it in right thorough detail and explained to him how he would participate in the toll revenue on a pro rate basis under this agreement."

In pursuance of the toll line agreement settlements were made upon a monthly basis from June 2, 1917, until May, 1920, based not upon a pro rate on "through messages," but upon a compensation on originating and terminating messages within the territory embraced by the lines of the appellee. During all this period no pro rate was claimed or allowed on these through messages. They did not pass through the exchange of the appellee nor were they dealt with in any manner whatever by the appellee. All that happened was that these "through messages" passed over the wires located in the town of Wytheville, over which appellee had nominal ownership.

This condition of affairs which was satisfactory to both appellant and appellee prevailed until the president of the appellee ascertained that some other companies in the State with which appellant was dealing were receiving more compensation than his company.

After an examination of the toll line agreement, the appellee made claim for the difference in toll rates

received and claimed, which claim was combatted by appellant.

[1] In construing section seven, embraced in the toll line agreement under review, this court will look to the circumstances surrounding the transactions, the construction placed upon the contract by the parties thereto, and from this viewpoint seek to arrive at an equitable conclusion.

[2] In the construction of contracts, the rule is stated by Judge Burks, in *Bank of the Old Dominion* v. *Mc-Veigh*, 32 Gratt. (73 Va.) 530, as follows: "As said in the opinion in *Talbott* v. *Richmond & Danville R. R. Co.* (3 Va. Law Journal, 486), to ascertain the intent of the parties is the fundamental rule in the construction of agreements (*Canal Co.* v. *Hill*, 15 Wall. 94 [21 L. Ed. 64]); and in such construction, courts look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described."

From the conduct of the parties for a period of three years it is manifest that the appellant construed the language of the contract to mean that it was only to pay a pro rate on messages originating or terminating on the lines of the appellee.

[3] This construction the appellee acquiesced in and was content to accept compensation on this basis. During this three year period the appellant made no effort to keep a toll study of through messages. In order to do this it would have to assume the burden

of keeping a record of all messages which originate at any point in the nation, outside of the limits of the lines of appellee.

This would impose upon the appellant the terms of an unconscionable bargain.

To construe the contract as contended for by appellee would give it a compensation it did not expect to receive when the agreement was entered into, did not claim for three years, and, according to the testimony of its chief officer, the alleged claim to compensation was a matter of accident. That the language of the agreement is not clear is the opinion of some of the members of the court.

[4] There being room for argument, at least, that the language is ambiguous, the question that naturally presents itself is what is the construction placed upon the agreement by the parties.

This construction is known as "the doctrine of practical construction."

In *Holland* v. *Vaughan*, 120 Va. 328, 91 S. E. 124, it is said: "No rule for the construction of written instruments is better settled than that which attaches great weight to the construction put upon the instrument by the parties themselves." See *Trigg* v. *Bucyrus Co.*, 104 Va. 86, 51 S. E. 174; *Butler Brothers* v. *Virginian Ry. Co.*, 113 Va. 35, 73 S. E. 441.

[5] Unless the intention of the parties to a contract is made manifest by the "language employed, *the subject matter and the surrounding circumstances*," that construction should be given which is consistent with the right of the case.

[6] Under all the facts and circumstances of this case, we are of the opinion that as the appellee acquiesced in the construction placed upon the contract by the appellant, it is concluded by such acquiescence

from now claiming a pro rate on "through messages," but appellee is entitled to a pro rate on all messages which originate or terminate on the lines of the appellee, in conformity with the construction placed upon the contract by the parties themselves during the period from June 2, 1917, until May, 1920.

The decree of the circuit court must, therefore, be reversed and annulled, and this court will enter such decree as that court should have entered.

*Reversed.*