UNITED DREDGING CO. et al. v. UNITED STATES, for Use and Benefit of M. SULLIVAN DREDGING CO.

No. 6800.

Circuit Court of Appeals, Sixth Circuit.

Jan. 10, 1936.

Roger Siddall, of New York City (Joseph Whelan and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City, on the brief), for appellants.

Fred Glover, Jr., of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The United Dredging Company entered into a contract with the United States to widen a part of the channel of St. Mary's river. The specifications required the dredging out of a strip about 200 feet wide on the southwest side of the river at a designated point so that the channel at that point would be 500 feet wide at the bottom, with a minimum depth of 22 feet below water datum. The material to be removed consisted of sand, gravel, boulders, hardpan, and ledge rock. The work was divided into sections and was to be paid for on a cubic yardage basis of material removed, measured in place by means of soundings or sweepings made before and after dredging. The contract provided that as soon as possible after the completion of the work on any section, the section would be examined by such soundings and sweeping as were deemed advisable by the contracting officer for the government, and should any shoals, lumps, or lack of contract depth be disclosed, the contractor would remove them by dragging the bottom or by further dredging until the work was found to be satisfactory to and was accepted by the contracting officer.

The United Company sublet parts of the work to the appellee, Sullivan Dredging Company, under written contracts. One of these contracts was made August 17, 1929. Under that contract the appellee bound itself to do the work in section B, course 6, Middle Neebish Channel, St. Mary's river, for stipulated prices according to the terms, conditions, and specifications of the contract between the United Company and the United States. On the same day a supplemental agreement was executed by the parties which provided that the United Company would do the "final sweeping" after the dredging. The appellee proceeded to perform the contract. In October of 1929 the United Company discovered that the work was not being done according to its view of the contract and wrote to the appellee demanding that it dredge full width and depth of channel as the work progressed, that is, mark out sections to be completed each month to grade, full width of channel, and advising it that before payment would be made for October work it would be required to dredge the excavated areas so that they

would be accepted by the government as having been dredged to grade. To this the appellee replied that it would drag the areas, but in order to have the work accepted by the Government the dragging would not be sufficient, and that the United Company would have to go over the areas with a sweeping derrick and clean them up before the government would accept them; that the sweeping and cleaning up was the United Company's part of the contract, and that when that was done there would be no difficulty about the government's acceptance of the work. No further communication passed between the parties. The United Company having refused payment of October estimates, Sullivan, an official of the appellee, sought and obtained an interview with Perry, the president of the United Company. What was said in the interview is not shown, for Perry died before the trial of the cause in the District Court, and because of a Michigan statute Sullivan could not testify to the conversations had at their meeting. It appears, though, that following the meeting the appellee executed a performance bond conditioned upon its faithful performance of the work under the contract, and that later the United Company paid the past-due estimates. Thereafter the appellee completed the work to the satisfaction of the United Company and the government without protesting or indicating that it expected compensation outside of that provided in the contract. Several months later, in September of 1931, it wrote to the United Company and indicated for the first time that it expected an allowance for final sweeping, stating that it "would like to discuss the payment for same" at a meeting to be held the following week. A meeting was held at which Sullivan obtained a check for $16,748 to which there was attached a statement of accounts between the parties, which statement did not, however, mention the claim in question. Two months later the appellee made a definite claim for extra compensation for doing the work, following which it filed this suit against the United Company and its surety, the Maryland Casualty Company, under the provisions of section 270, 40 U.S.C.A., to recover $49,000, which it claimed was the reasonable value of the work. Issue was joined on the claim and the case tried before a jury, which returned a verdict for the appellee for $30,-000 upon which there was judgment.

The controversy between the parties on the trial was over the meaning of the phrase "final sweeping" in the contract of August 17, 1929. The appellants contended that it meant the running over of the bottom of the excavation, after the appellee had reported that a 22-foot depth had been reached, of a steel rail, and that the purposes of doing this were to level off any shoals of sand or gravel by pushing them down into hollows and to find out whether the appellee had failed to remove any ledges or rocks protruding above the required depth. They further contended that if it was found that there were such ledges or rocks, it was then the duty of appellee to remove them and complete its work according to contract. The appellee contended that the phrase meant the removal of all rocks and ledges protruding above the 22-foot level, and that the duty of performing this service devolved upon the United Company under the contract. The appellee evidently left many of such ledges and rocks which had to be removed. The trial court being in doubt as to the meaning of the phrase left it to the jury to determine whether it was understood by the parties, at the time the contract was made, to include the removal of rock and ledges protruding above the 22-foot level, and charged the jury that if it should find that it was so understood by the parties and should further find that the appellee did the work upon the order and at the request of the United Company, it should return a verdict in favor of the appellee for the reasonable value thereof.

By motions for directed verdicts, the appellants raised the question of the sufficiency of the evidence to submit the case to the jury. We think there was substantial evidence to support the appellee's position with reference to what the parties meant by "final sweeping"; but on the other feature of the case, whether the appellee did the work on the order and at the request of the United Company though not bound to do it under the contract, there was, we think, no question for the jury. The facts on that point are not in dispute. There was a controversy between the parties as to the meaning of the contract. The United Company demanded that appellee do the work, insisting that it was bound to do it under the contract. The appellee, taking a different view, refused. The United Company then withheld payment on estimates for prior work. A con-

ference between Sullivan and Perry resulted in the execution of a performance bond by the appellee and the payment to it by the United Company of the past-due estimates. Following this, the appellee proceeded to do the work without protest and made no claim for compensation therefor until more than a year after the completion of the work and its acceptance by the government. The only reasonable inference to be drawn from these circumstances, in the absence of other pertinent evidence, and there is no other, is that the appellee acquiesced in the United Company's construction of the contract and did the work without expecting to be paid therefor further than as provided in the contract. Certainly there is nothing in the record to indicate that the United Company expected to pay. The United Company was insisting that it was appellee's duty to do the work under the contract. If appellee felt that that interpretation of the contract was wrong, it had the right to refuse to accede to the insistence and to sue for the amount due it for work already performed. Instead of pursuing that course, it yielded and voluntarily did the work. Perhaps its officers had future contracts in view and felt that it would have a better chance of getting other contracts if it complied with the United Company's demands. It did in fact make another contract with the United Company, and not until after that contract was completed did it assert the claim on which it is here suing. Whatever its purposes might have been, it certainly did nothing, after the execution of the performance bond and the payment of the past-due estimates, to put the United Company on notice that it expected to be paid beyond the contract price. Its secret intention to charge extra for the work, if it had such intention, cannot give rise to an implied promise on the part of the United Company to pay, for an implied promise must arise from a purpose made manifest to and acquiesced in by the one to whom it is charged.

The situation is similar to that presented in Doyle v. Rector, etc., Trinity Church, 133 N.Y. 372, 31 N.E. 221, where it was held that after the contractor had apparently acquiesced in the employer's view of his duty under the contract, he could not recover for extra services. Compare Forster v. Green, 111 Mich. 264, 69 N.W. 647. The Supreme Court cases upon which the appellee relies are inapplicable. The basis of the decision in United States v. L. P. & J. A. Smith, 256 U.S. 11, 17, 41 S.Ct. 413, 65 L.Ed. 808, was misrepresentation. In Freund v. United States, 260 U.S. 60, 43 S.Ct. 70, 67 L.Ed. 131, there was evidence of duress and misrepresentation, and the work was done under protest. There is no question here of legal duress or misrepresentation, nor any fact or circumstance disclosed in the evidence from which the United Company could reasonably have expected that it would be asked to pay.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.