## SWALLEY v. ADDRESSOGRAPH MULTI-GRAPH CORPORATION.
### No. 8842.

Circuit Court of Appeals, Seventh Circuit.
Oct. 31, 1946.

Rehearing Denied Nov. 29, 1946.
Writ of Certiorari Denied March 31, 1947.

Oliver R. Barrett, of Chicago, Ill., and Philip L. Aitken, of Lincoln, Neb. (Daily, Dines, White & Fiedler, of Chicago, Ill., of counsel), for appellant.

Weymouth Kirkland, Robert E. Cantwell, Jr., and Jay Frederick Reeve, all of Chicago, Ill., for appellee.

Before KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

MINTON, Circuit Judge.

The plaintiff sued the defendant for commissions alleged to be due him for services rendered to the defendant as sales agent for the sale of the defendant's products, including multigraph and multilith machines and attachments, in a territory comprising the State of Alabama and some counties in northern Florida.

On March 25, 1941 a written contract was entered into to be effective as of March 6, 1941 and terminable at the will of either party. Section 8 of the contract is controlling and is set forth in the footnote.[1]

---

[1] "Commission on Sales in Other Territories:

"8. Sales Agent shall not enter any territory other than hereinabove specified, for the purpose of selling the products of Company for use either within or outside of the above specified territory without first securing consent in writing of Sales Agent in said other territory, or of Company. On orders for machines or attachments, with or without supplies, secured by Sales Agent in the above territory for use in other than the above specified territory, Sales Agent shall receive 25% of the total commission to be paid on any such sales. When under like circumstances any other authorized Sales Agent of Company shall sell machines or attachments, with or without supplies, to be used in the territory specified in this contract, Sales Agent under this contract shall receive 75% of the authorized commission to be paid on any such sales. In the event that new or used equipment is transferred from one territory to another within ninety (90) days from date of shipment by Sales Agent or Company, the commission on such equipment, including supplies specified on original order, shall be readjusted on a basis of 75% of total commission to Sales Agent in whose territory the equipment was transferred, and 25% of total commission to Sales Agent who made the sale. On orders for or sales of supplies only, total commission will be paid to Sales Agent in whose territory the supplies are to be used, except that this does not apply to re-shipment of supplies by a customer to its subsidiaries or branches. These commissions stated in Clause 8, are to be subject to the same liability to be charged back against Sales Agent's account in case of non-payment by the purchaser, as in other cases specified in Clause 6 of this contract."

By this section it was provided that if any machines or attachments were sold by an agent in another territory and shipped into the plaintiff's territory *to be used* in that territory, the plaintiff was to be paid 75% of the total commission although he did not make the sale. The plaintiff's share in the commission was so large because he had the duty of installing the machines, training the operators, and servicing the machines for a certain period of time.

In March and May 1942 the defendant through its agent in the Dayton, Ohio, territory obtained three different orders for machines and attachments from the Army Air Corps at Wright Field, Dayton. The Army, being unable for reasons of its own to designate the locations to which these machines and attachments were to be sent for installation, had them shipped to six depots maintained and operated by the Air Corps. From these depots, the Air Corps would order out the machines to such points as it might choose when, as, and if needed.

The defendant had no control over the equipment after it reached the depot. One of these depots was located in Mobile, Alabama, and some of the machines and attachments contained in the afore-mentioned three orders were shipped on Air Corps orders to this depot. The agent at Dayton received 25% of the commission for selling these machines and attachments. When the machines and attachments were shipped from the Mobile Depot to a point in the plaintiff's territory to be there installed, he filled out a form provided by the defendant and claimed his commission of 75% of the total commission. On such transactions he was paid commissions of $6,324.94.

Before the Army Air Corps adopted the policy of sending machines and attachments to depots for storage, the defendant sent to the plaintiff and its other sales agents a bulletin stating that such machinery and attachments ordered to Army depots would be considered in transit and no commission thereon would be paid agents such as the plaintiff until the equipment was shipped out of storage into their territory to be installed, which of course would entail the duty on the part of the plaintiff and others similarly situated to install the machinery, train the operators, and service the machines.

The plaintiff made no objection to this interpretation or modification of the contract but operated under it and received over six thousand dollars' commission in reliance thereon. Each month the defendant submitted to the plaintiff a statement of the debits and credits in his account, to which were attached invoices explanatory thereof. These statements were accepted without objection by the plaintiff.

The plaintiff was paid not only 75% of the total commission on all the machinery installed in his territory that had been shipped from the Mobile Depot, but he also received commission on a machine shipped into his territory from a depot in Middletown, Pennsylvania.

The contract between the parties was terminated in March 1943, and on April 8, 1943 the plaintiff commenced this action in which he contended that he was entitled not only to 75% of the commission for all machinery and attachments that came to the Mobile Depot and were thereafter installed in his territory, but also for all that were stored in this depot over ninety days. For this contention, reliance was placed upon that part of Section 8 of the contract which provides:

"In the event that new or used equipment is transferred from one territory to another within ninety (90) days from date of shipment by Sales Agent or Company, the commission on such equipment, including supplies specified on original order, shall be readjusted on a basis of 75% of total commission to Sales Agent in whose territory the equipment was transferred, * * *."

The court found that all the machines and attachments sent to the Mobile Depot under the three orders involved remained there over ninety days and that the plaintiff was entitled to recover 75% of the total commission on all such machines and attachments, and judgment was entered accordingly.

The defendant contends that the contract as drawn and modified, to which no objection was made by the plaintiff, should be construed to limit the compensation of

the plaintiff to 75% of the total commission on the machines and attachments installed and used in the plaintiff's territory, whether shipped from the Mobile Depot or from some other depot, and that the words "use" and "to be used" contained in the contract and referring to machines and attachments mean such as had been installed and employed for the use for which they were manufactured and intended. ·

On the other hand, the plaintiff contends that the words were capable of the construction that storage was a kind of use to which the Army put the machines and attachments in building up an inventory; therefore, all of the machines and attachments stored in the Mobile Depot were "used" in the plaintiff's territory, and since all of them had remained over ninety days, 75% of the commission on all of them was due and owing the plaintiff. The plaintiff places great stress on this ninety-day clause. If "storage" is the same as "use," then it would not make any difference whether the goods had been in the depot one day or ninety. In this same ninety-day clause of Section 8 of the contract the parties put a construction on the word "used" as something other than storage. It provides: "In the event .that new or *used* equipment is transferred * * *." (Italics supplied.) The association of the words "new" and "used" together is to distinguish between new equipment and equipment that had been installed and employed for the purpose for which it was manufactured—the distinction between new and what we know as secondhand machinery. The words "use" and "to be used" in Section 8 of the contract are employed in no different sense. We think that the contract is not ambiguous and that the words "use" and "to be used" are to be given their ordinary meaning: "To employ; * * * to put into operation; to cause to function." See Webster's New International Dictionary, Second Edition, 1941. The words "use" and "to be used" as employed in this contract are 'not synonymous with storage. Northern Pac. Ry. Co. v. Henneford et al., Tax Commissioners, 9 Wash.2d 18, 113 P.2d 545, 547; Pacific Telephone and Telegraph Co. v. Henneford et al.,

Tax Com'rs, 195 Wash. 553, 81 P.2d 786, 791.

Since the meaning of the word "use" as we have defined it above was placed thereon by the defendant in a bulletin sent to the plaintiff and other sales agents before the three orders here involved were obtained, and since it applied to the contract in question, to which meaning the plaintiff not only did not object but accepted and continued to work under, a construction of the contract in accordance with said bulletin was placed thereon by the parties themselves. No sounder guide to the contract's meaning can be found than the interpretation of the parties themselves. United Dredging Co. et al. v. United States, for Use and Benefit of M. Sullivan Dredging Co., 6 Cir., 81 F.2d 118; Chick et al. v. MacBain, 157 Va. 60, 160 S.E. 214, 217; Chesapeake & Potomac Telephone Co. v. Wythe Mut. Telephone Co., 142 Va. 529, 129 S.E. 389; George Tritch Hardware Co. v. Donovan, 74 Colo. 350, 221 P. 881, 882.

Furthermore, since the contract was one terminable at the will of either party, it therefore could be modified at any time by either party as a condition of its continuance. The interpretative bulletin which stated that goods shipped for storage were considered in transit and the 75% of the total commission would 'be paid only when the machines were ordered out of storage and installed for use in the agent's territory was accepted by the plaintiff and used as a basis of continued employment. The contract therefore was modified by the parties to meet the terms laid down in that bulletin. The cases are legion and uniform which sanction that proposition. Flint et al. v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923; Curtiss Candy Co. v. Silberman et al., 6 Cir., 45 F.2d 451; Norton v. Inhabitants of Town of Brookline, 181 Mass. 360, 63 N.E. 930; Trainer v. Laird et al., 320 Pa. 414, 183 A. 40.

Since an erroneous construction was placed upon this contract by the trial court, the judgment is reversed and the cause remanded to the District Court for proceedings in accordance with this opinion.