## Richmond

ARCHIE F. PARRISH, MARY CRILLY, EVA R. DANIELS AND
E. L. DONALSON, PARTNERS, TRADING AS ARCHIE'S
LOBSTER HOUSE v. VIVIAN M. ROBERTSON
AND PAUL K. ROBERTSON.

March 15, 1954.

Record No. 4175.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and
Whittle, JJ.

The opinion states the case.

*Woodrum, Staples & Gregory, Clifton A. Woodrum, Jr.* and *James L. Trinkle,* for the appellants.

*Arthur E. Smith* and *M. Caldwell Butler,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Vivian M. Robertson and Paul K. Robertson, hereinafter referred to as the Robertsons, filed a motion for judgment against Archie F. Parrish, Mary Crilly, Eva R. Daniels, and E. L. Donaldson, partners, trading as Archie's Lobster House, hereinafter referred to as Parrish. The motion sought the recovery of damages growing out of Parrish's failure, as lessee of certain premises for a term of three years, to operate thereon a restaurant for the full term, as required by an alleged covenant in the lease.

The trial court held that an accounting was necessary and the case was transferred from law to chancery, and Master Commissioner William L. Martin was appointed to take evidence and report his findings. The Commissioner heard the case and decided the issues. His findings, which will be considered later, permitted the Robertsons to recover of Parrish the sum of $68.04, representing ten per cent remaining unpaid on a net profit in the business of $680.37. Exceptions to the report were in the main sustained by the trial court, and a decree was entered granting the Robertsons a judgment in the sum of $7,000, with interest as therein provided. From the decree Parrish appealed.

The record discloses that on March 4, 1947, Archie F. Parrish entered into a lease with the Robertsons for a certain building then under construction on U. S. Route 11, outside the corporate limits of the city of Roanoke. The structure was completed, and on May 1, 1947, Parrish was placed in possession. While Parrish was the sole signer of the lease, he had as partners (allegedly unknown to the Robertsons) Mary Crilly, Eva R. Daniels, and Fla Romick.

Later Romick withdrew as a partner and E. L. Donalson succeeded him.

The second paragraph of the lease, the basis of this controversy, reads as follows:

"The lessors agree to the (sic) lease to the lessee and the lessee agrees to lease from the lessors that certain property known as Archie's Tavern, located on U. S. 11 near Cove Road and being the same property purchased by Paul K. Robertson from A. T. Loyd, Special Commissioner, the said property to be used as a Night Club and Tourist Home for a term of three years, with option on same building for another three years, commencing on the date the building is completed and ready for occupancy, at the base rental of $250.00 per month, plus 10% of the net profits from the operation of the business, which base rental and the net profit are payable on the first day of each month—the base rent being payable in advance, and the net profit at the end of each month."

While the above paragraph indicates that the premises were to be used "as a night club and tourist home", it is conceded by the parties that a general restaurant business was to be operated therein.

From May 1, 1947, until November 1, 1948, a period of eighteen months, Parrish operated such a business in the premises under the name of "Archie's Sea Food Tavern". On or about October 1, 1948, Parrish leased "Warren's Chicken House", located on U. S. Route 11, nearer the city of Roanoke. The name of this establishment was changed to "Archie's Lobster House", and on November 1, 1948, Parrish commenced to operate therein a general restaurant.

When Archie's Lobster House was placed in operation as a general restaurant, Archie's Sea Food Tavern ceased to operate as such; however, Parrish did operate the tavern as a business catering mainly to banquets and special parties.

From May 6, 1947, through October 8, 1948, Parrish paid the Robertsons the base rental of $250 each month and in addition thereto paid ten per cent of the net profits. The

months of January, February, and March, 1948, disclosed no net profits and only the base rental of $250 for each of these months was paid. The ten per cent of the net profits for the other months varied from $47.87 in July, 1947, the lowest month, to $118.13 for August, 1947, the highest month.

Commencing with November 1, 1948, after the restaurant operation had been moved, and continuing through the remainder of the three year term, to April 1, 1950, the base rental of $250 per month was tendered by Parrish to the Robertsons and was accepted without objection.

In the motion for judgment filed August 9, 1950, the Robertsons contended, as aforesaid, that by covenant in the lease Parrish was required to operate a general restaurant business in the premises for the full term of the lease. They further contended that in discontinuing the restaurant operation and moving the business to the new location known as Archie's Lobster House and thereafter using Archie's Sea Food Tavern only for the purpose of banquets and parties Parrish was guilty of a breach of this covenant, and that from the time of making the move up to the termination of the lease on May 1, 1950, the Robertsons became and were entitled, in addition to the $250 per month base rental, to ten per cent of the net profits accruing from the operation of both establishments. In addition to the foregoing, the Robertsons contended that in computing the net profits the salaries paid the four partners for services in operating the business were not properly deductible expenses.

Parrish contended that there was no covenant in the lease, either express or implied, requiring him to operate a general restaurant business in the premises during the term; that the lease was prepared by the Robertsons and their attorney and should be strongly construed against them; that there were only small net profits from the operation of the leased premises known as Archie's Sea Food Tavern after the month of October, 1948, and that Parrish was

obliged to pay only the base rental of $250 per month, plus such sum as would amount to ten per cent of the net profits.

It was further contended by Parrish that since the restaurant business was moved to Archie's Lobster House without objection, and the base rental of $250 per month was paid to the Robertsons and accepted without complaint or protest, such conduct constituted an acquiescence in the construction placed on the lease by Parrish and the Robertsons were bound by this construction.

The Commissioner found that there was no covenant to operate. In dealing with this subject he reported:

"* * * The plaintiffs (Robertsons) knew beforehand that Parrish was going to move and discontinue the operation of a general restaurant at the premises leased from them. The plaintiffs not only knew and made no protest but acquiesced in such moving. The evidence discloses that in the expectation of both parties the catering to parties and banquets would be more profitable to them. In view of this fact, the plaintiffs would now be estopped to claim that, in so moving, the defendants breached a covenant to continue to operate even if such a covenant were express."

The Commissioner also found that as the partnership consisted of "working partners", their salaries were properly deductible before the net profit was figured. He reported: "* * * (T)he plaintiffs (Robertsons) expected Parrish to deduct a salary and the other partners to be paid even though they did not know they were partners."

The trial court, after considering and sustaining exceptions to the report, held that the evidence was sufficient to sustain the contention of the Robertsons that the lease contained an implied covenant between the parties "whereby the defendants were required to operate Archie's Sea Food Tavern (as a general restaurant) throughout the term of the lease". The court held, however, that Parrish was guilty of no fraud in making the move to the new location and

therefore the Robertsons were not entitled to net profits from both establishments.

The court also held that the salaries of the four partners should not be deducted before ascertaining the ten per cent due the Robertsons. Whereupon it computed the amount due the Robertsons by "using (the net profit shown in) September, 1948, as a base for each month thereafter during the term of the lease". To the aggregate of the sum so computed the court added ten per cent of the partners' salaries theretofore deducted and thus arrived at the $7,000 judgment complained of.

In our view of the case it is not necessary to indulge in a discussion of the law involving percentage leases. See 32 Am. Jur., Landlord and Tenant, § 432, pp. 351, 352; 52 C.J.S., Landlord and Tenant, § 502(b), pp. 284, 285, 286. In the case before us the parties to the lease agreement have placed their construction on the contract, indicating by their conduct that they did not consider it to be such.

The record shows that Parrish discussed with the Robertsons the move of the restaurant business from the Robertsons' property to the Warren location. Parrish explained the reasons for the move and suggested to Mrs. Robertson that it was his intention to use Archie's Sea Food Tavern as a place to hold banquets and special parties. The Robertsons at no time offered any objection to the plan. When questioned about the proposed change in operation, Mrs. Robertson stated: "Yes, he (Parrish) told me he was going to move but I had my contract. I didn't worry about his rent." Mrs. Robertson admitted that she made no protest regarding the move; that she knew of Parrish's plan to hold special parties and banquets at the Tavern instead of operating a general restaurant there; she stated that they expected to get ten per cent out of the net profits from the parties and banquets, "* * * which I expected to be more than I was getting (from the restaurant)"; that if the banquets and parties had paid a profit of ten per cent they (the Robertsons) would have been perfectly satisfied.

If the Robertsons desired to object to the move they should have made a timely protest. On the contrary they made no objection whatever and accepted the $250 rent checks as tendered over a period of eighteen months. The last check accepted at the end of the term bore the notation "For April, 1950 rent, final payment".

The record discloses that the Master Commissioner, who observed the witnesses and heard them testify, was amply warranted in finding that the Robertsons not only knew of the move and made no protest but acquiesced in the change, believing that the banquet and special party business would prove profitable.

The contract of lease here involved was prepared by an attorney for the Robertsons. In such an instrument, where uncertainties or ambiguities exist, the tenant is favored by law "* * * because the landlord, having the power of providing expressly in his own favor, has neglected to do so; and also upon the general principle that every man's grant is to be taken most strongly against himself. Thus, the language of a lease which is fairly susceptible of two constructions is to be taken most against the lessor." 11 M.J., Landlord and Tenant, § 9, pp. 650, 651; *Stonegap Colliery Co.* v. *Kelly*, 115 Va. 390, 79 S. E. 341, 48 L.R.A. (N.S.) 883.

There is no specific provision in the lease requiring Parrish to occupy the premises and conduct thereon a general restaurant business throughout the term. We cannot agree with the argument that such construction can be placed upon the contract by "direct implication". If any such obligation arose under the agreement, of necessity it must be implied. It could hardly be contended that Parrish would have been obligated to continue the restaurant business if they were losing money. Acting in good faith, under such circumstances, they could close the business, thus limiting their obligation under the contract to the payment of the base rental of $250 per month.

We are of the opinion that the Robertsons placed their

own construction upon the contract, and that even if an implied covenant existed requiring the restaurant business to be continued throughout the term, for the reasons assigned such covenant was waived. When a written instrument is capable of more than one construction the courts will give to it the construction which the parties themselves have placed upon it. *Chick, et al.* v. *MacBain*, 157 Va. 60, 160 S. E. 214; *Holland* v. *Vaughan*, 120 Va. 324, 91 S. E. 122, 124; *C. & P. Telephone Co.* v. *Wythe Mut. Tel. Co.*, 142 Va. 529, 129 S. E. 389; *Eppes* v. *Eppes*, 169 Va. 778, 195 S. E. 694.

Parrish contends that the trial court erred in overruling the Commissioner's report and decreeing that the salaries of the partners could not be deducted in computing the net profits upon which the ten per cent rental was calculated. The contract involved was signed by Archie F. Parrish, as lessee, and by the Robertsons, as lessors. It is contended by the Robertsons that they did not know that the partnership existed at the time the lease was executed. The Robertsons thought they were dealing with Archie F. Parrish alone, and the contract so indicated.

It is admitted by the Robertsons, however, that they knew all four partners worked in the business and that they were being paid for their services. The Robertsons admitted also that if Mary Crilly, Eva R. Daniels and E. L. Donalson had not worked in the business it would have been necessary to employ help to take their places and that the salaries paid to such help would properly be deductible. The Robertsons' contention, in brief, is that they knew these people were working and receiving salaries which were being deducted but they did not know they were partners. There is no claim that the salaries were excessive.

We are of the opinion that the salaries paid the three "working partners" (excluding Parrish) were properly deductible, it being admitted that their services were necessary whether they were partners or employees. We are of the opinion, however, that any salary paid Archie F. Parrish should not be deducted before computing the ten per cent

net profits. The contract of lease, as aforesaid, was between Archie F. Parrish and the Robertsons, and under the contract terms Parrish was to receive ninety per cent of the net profits and the Robertsons ten per cent. The contract does not provide that Parrish be allowed a salary in addition to this percentage. While there is evidence in the record that the Robertsons knew Parrish was drawing a salary and that figures were shown them which indicated that such salary was being periodically deducted, the record also shows that such was not actually the understanding of the Robertsons. Vivian M. Robertson testified:

"Q. Mrs. Robertson, when you say that you understood these people (meaning the three partners other than Parrish) were to take salaries, did you think Mr. Parrish's salary would be charged against your net profits?

"A. No, it seems that just what he made on his business would be his—not his salary and above that."

In view of the foregoing, we are of the opinion that the decree complained of should be reversed in the particulars indicated and the case remanded with the direction that the Robertsons recover ten per cent of any amount deducted as salary paid to Archie F. Parrish by Archie's Sea Food Tavern, plus the amount of $68.04 allowed them in the Commissioner's report, to which no error was assigned.

The appellants having substantially prevailed in this litigation, they shall recover the costs in their behalf expended. Section 14-178, Code of Virginia, 1950.

For the reasons here expressed the decree of the trial court is affirmed in part, reversed in part, and the case remanded.

*Affirmed in part; reversed in part and remanded.*