Present:  All the Justices

LANDMARK HHH, LLC

                                        OPINION BY
v.  Record No. 072365      JUSTICE LAWRENCE L. KOONTZ, JR.
                                    January 16, 2009
GI HWA PARK

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       R. Terrence Ney, Judge

     In this appeal, we consider whether the circuit court

correctly determined that under a lease for commercial real

estate the landlord was liable for contract damages for the

loss sustained by the tenant when the roof of the leased

premises leaked during a rainstorm, inundating the leased

premises and causing substantial damage to the tenant's

inventory.  We further consider whether the court erred in

failing to hold that the provisions of the lease requiring the

tenant to maintain hazard insurance and hold the landlord

harmless for any insured losses barred the tenant from seeking

to obtain damages for all the losses sustained.

                            BACKGROUND

     This case was tried by the circuit court, sitting without

a jury.  Upon appellate review, the court's judgment is

entitled to the same weight as a jury verdict and will not be

set aside unless it appears from the evidence that the

judgment is plainly wrong or without evidence to support it.

Code § 8.01-680; Hickson v. Commonwealth, 258 Va. 383, 387,

520 S.E.2d 643, 645 (1999). Accordingly, we recite the facts in this case in the light most favorable to the tenant, the party in whose favor the circuit court rendered its judgment. Government Micro Res., Inc. v. Jackson, 271 Va. 29, 35, 624 S.E.2d 63, 66 (2006).

In May 1998, Gi Hwa Park entered into a commercial lease with Landmark HHH, LLC (Landmark) for a retail space located in the Plaza at Landmark, a shopping center in Fairfax County. Park intended to operate a clothing store called The Four Seasons in the leased space, specializing in high-end imported men's suits and related accessories. As relevant to this appeal, the lease contained the following provisions:

16(b) Tenant, at its sole cost and expense, shall be responsible for providing a policy of fire and extended coverage insurance, insuring Tenant's inventory, . . . and all other contents in the Premises . . . .

25(a) Landlord shall endeavor to keep the foundation, roof, and the outer walls . . . of the Premises in good repair and make such repairs to the foundation, roof and outer walls as are necessary following Landlord's knowledge of the necessity of said repairs . . . .

37(c) Landlord and Tenant hereby release the other from any and all liability or responsibility to the other or anyone claiming through or under them, by way of subrogation or otherwise, from any loss or damage to property caused by fire or any other perils insured under policies of insurance covering such property (but only to the extent of the insurance proceeds payable under such policies), even if such loss or damage is attributable to the fault or negligence of

2

the other party, or anyone for whom such party may be responsible.

Within three weeks of Park's opening of The Four Seasons and continuing through September 2005, leaks in the roof allowed water to flow into the store, damaging the ceiling and causing wet spots throughout the store. The leaks would occur several times during the year, especially when precipitation was heavy. Tony Park, Park's son and manager of The Four Seasons, contacted Landmark's property manager multiple times concerning the leaks. Landmark took various remedial steps to attempt to repair the damage to the interior of the store and to repair the roof.

Between September 2005 and February 2006, in response to complaints from Park and other tenants, Landmark undertook to replace the entire roof of the shopping center. Landmark hired Waterproofing Consulting Company, Inc. (WCC) to design and monitor the installation of a new roof. On WCC's recommendation, Landmark contracted with Potteiger-Raintree, Inc. to perform the actual installation. Despite the addition of the new roof, water continued to leak into The Four Seasons, and Tony Park again reported this fact to Landmark, which referred the matter to WCC. WCC and Potteiger-Raintree took corrective measures to connect a drain and repair

3

improperly installed flashing, but intermittent leaks continued to occur.

On the morning of June 26, 2006, following a night of record rainfall in Northern Virginia, Tony Park arrived at The Four Seasons and immediately noticed an "unbearable stench," and, after turning on the lights, discovered that the entire store had been flooded. The ceiling tiles had fallen in, and there was substantial water damage to the store's inventory. Inspectors from Fairfax County visited the store the following day, June 27, 2006, and informed Tony Park that because of the store's condition, he would have to close the business temporarily.

Shortly after the flooding, extensive repairs were made to The Four Seasons. Even after the repairs were completed, a bad odor remained in the store and much of the inventory was not recoverable despite efforts to clean it. Although The Four Seasons briefly re-opened in the late summer and early fall of 2006, the store was closed permanently in November 2006.

In a complaint filed October 16, 2006 in the Circuit Court of Fairfax County, Park sought to recover damages from Landmark for breach of its lease obligation to provide a serviceable roof and to provide her with the quiet enjoyment

of the leased premises. Park asked for $550,000 in compensatory damages, principally for the lost inventory.

At trial, in addition to evidence consistent with the above-recited facts, Park presented testimony from Kyong Ho Kim, a commercial roof repair expert, who opined that the new roof had been improperly installed. Kim testified that there were gaps in the cap flashing where the flashing connected with one of the roof's expansion joints; this gap allowed water to flow underneath the roofing surface and into the building. Furthermore, Kim testified that the roof contained an insufficient number of drains to accommodate the influx of water coming from a higher, larger adjoining roof of a department store in the shopping center.

At the conclusion of the evidence, the circuit court held that section 25(a) of the parties' lease required Landmark to keep the roof in good repair, regardless of any notice of defects. Thus, despite the fact that Landmark had contended that it did not have sufficient notice that the newly installed roof would fail, the court ruled that the failure of the roof constituted a breach of Landmark's duties under the lease. The court further held that the provision in section 16(b) of the lease requiring Park to maintain insurance on inventory and the limitation of liability provision in section 37(c) did not insulate Landmark from being subject to a claim

for breach of the lease. The court noted that the lease had been drafted by Landmark and, thus, it was Landmark's burden to show that the lease was intended to make Park solely responsible for any property loss. In the court's view, no such intention was found in the express language of the lease. The court awarded Park $298,762.56 in damages consisting of $282,618.00 for two-thirds of the value of the lost inventory, $11,014.50 for certain incidental expenses incurred in attempting to mitigate damages, and $5,130.06 as a return on the security deposit on the leasehold.

DISCUSSION

A lease is a contract and "'when the terms of a contract are clear and unambiguous, a court must give them their plain meaning.'" Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 57, 662 S.E.2d 44, 51 (2008) (quoting Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp., 263 Va. 169, 173, 556 S.E.2d 769, 771 (2002)). "On appeal, we review a trial court's interpretation of a lease under a de novo standard." Id. We do not accord any deference to the circuit court's interpretation of the lease "because we are afforded the same opportunity as the circuit court to interpret the terms of the parties' contract." Pocahontas Mining L.L.C. v. CNX Gas Co., LLC, 276 Va. 346, 352, 666 S.E.2d 527, 531 (2008).

Landmark first contends that the circuit court erred when it found Landmark breached the lease by failing to provide a leak-free roof.  According to Landmark, the lease required Park or another tenant to give Landmark notice of a defect in the new roof and that Landmark be given an opportunity to remedy the defect before it would be in breach of the lease.  Landmark contends that any notice it had of defects with the new roof was not sufficient to impose liability upon it because it took reasonable steps to have the contractor and subcontractor remedy the defects, and it had no notice that the roof would fail entirely.  We disagree.

Landmark's contention places too narrow a construction on section 25(a) of the lease.  That provision requires Landmark to keep the roof "in good repair" at all times during the period of the lease.  The further requirement that Landmark "make such repairs . . . as are necessary following [Landmark's] knowledge of the necessity of said repairs" is not a limitation on the principal duty to provide a serviceable, leak-free roof.  The duty to keep the roof in good repair would be effectively negated if necessary repairs to the roof were only required when Landmark was notified by a tenant of defects in the roof.

Moreover, we do not agree with Landmark's contention that by undertaking to replace the roof it could, in effect, shield

7

itself from the responsibility of providing a serviceable roof unless and until a tenant gave notice that the new roof was defective. To the contrary, maintenance of the roof was in the exclusive control of Landmark, and when it undertook to replace the roof as part of its responsibility to Park and the other tenants in the shopping center, Landmark bore the sole responsibility to assure that the new roof would be "in good repair" as required by the lease terms.[1]

Finally, Landmark asserts that when read together sections 16(b) and 37(c) evince an intention of the parties to absolve each other of liability for any loss or damage to

---

[1] We do not address Landmark's assertion that Park might have sought to recover from WCC or Potteiger-Raintree. Even assuming that Park might have maintained an action against the contractors as a third-party beneficiary of the contracts with Landmark, she was not required to do so, nor would any potential liability of the contractors absolve Landmark of its duties under the lease. We also will not consider Landmark's assignment of error contending that the circuit court erred "by imputing the arguable negligence of the landlord's independent contractors to the landlord." In support of this argument, Landmark relies exclusively on cases arising in tort against landlords for personal injuries to tenants or invitees as the result of the negligence of third-party contractors. Park's complaint was for breach of the lease, thus negligence was not an issue in the case. Moreover, the record does not support the contention that the court's judgment was premised on a finding of negligence in the installation of the roof. Rather, the court found that the failure of the roof, whether by reason of its negligent installation or some other cause, was a breach of Landmark's lease obligation to maintain the roof.

property, and that the circuit court ignored these provisions by allowing Park to maintain this suit. Again, we disagree.

Section 16(b) of the lease required Park to maintain insurance on her inventory, which she did. The language of this section, however, does not limit either party's ability to bring suit against the other for violations of the lease. Similarly, section 37(c) required Park to absolve Landmark from any losses she sustained "to the extent of the insurance proceeds payable" on such losses. The plain language of this section only prohibits Park from obtaining a double recovery on a loss sustained and requires Park to release Landmark from any claim of subrogation by her insurer.[2]

We agree with the circuit court that had Landmark, as the drafter of the lease, desired to be exempt from all liability for losses sustained by Park as the result of the common hazards to which the property would be subject, it was required to express the exemption in the plain language of the lease. See e.g. Nextel WIP Lease Corp. v. Saunders, 276 Va. 509, 516, 666 S.E.2d 317, 321 (2008) (quoting Parrish v.

---

[2] During oral argument of this appeal, Park's counsel averred that the judgment included a credit for proceeds from the insurance on the inventory. Application of this credit is not reflected in the final order. However, Landmark has not challenged the amount of the judgment by an assignment of error and, therefore, we are not concerned in this appeal with whether such a credit was owed and applied.

9

Robertson, 195 Va. 794, 800, 80 S.E.2d 407, 410 (1954)) (recognizing the principle that a landlord has "the power of providing expressly in his favor" when drafting a lease). Indeed, a further provision of the lease expressly limited Landmark's liability, stating that "[i]n no event shall Landlord be liable to Tenant for loss of business or consequential damages."  Landmark is, in effect, asking the Court to find implicit in the lease a term that it could have expressly included, but failed to do so.  However, when interpreting a contract, we construe it as written and will not add terms the parties themselves did not include.  TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

Accordingly, we hold that the circuit court did not err in holding that Landmark's failure to provide a serviceable, leak-free roof constituted a breach of its lease with Park and that the lease did not absolve Landmark from liability for the damage sustained by Park with respect to her inventory.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court will be affirmed.

Affirmed.

10